No. 24-50595

# In the United States Court of Appeals for the Fifth Circuit

EDGAR GARCES ROBLES; RAMIRO SOTO ALTAMIRANO;
JUAN JOSE SOTO HERNANDEZ; AND RODOLFO RUIZ DE LA CRUZ,
*Plaintiffs-Appellees,*

*v.*

JOE FRANK MARTINEZ, IN HIS INDIVIDUAL CAPACITY; MARIA RAMIREZ, IN HER
INDIVIDUAL CAPACITY; JOHN CIRONE, IN HIS INDIVIDUAL CAPACITY;
FELIPE GONZALEZ, IN HIS INDIVIDUAL CAPACITY; RONNY TAYLOR, IN HIS
INDIVIDUAL CAPACITY; BRAD COE, IN HIS INDIVIDUAL CAPACITY; AND RICARDO
ALVARADO, IN HIS INDIVIDUAL CAPACITY,
*Defendants-Appellants.*

On Appeal from the United States District Court
for the Western District of Texas, Austin Division
Case No. 1:23-CV-00981

## BRIEF FOR APPELLANTS TAYLOR, GONZALEZ, RAMIREZ, AND CIRONE

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney
General

**JAMES LLOYD**
Deputy Attorney General for Civil
Litigation

**KIMBERLY GDULA**
Chief, General Litigation Division

**MARLAYNA M. ELLIS**
Assistant Attorney General
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2798 | FAX: (512) 320-0667
marlayna.ellis@oag.texas.gov

*Counsel for Defendants-Appellants*

## CERTIFICATE OF INTERESTED PERSONS

Under the fourth sentence of Fifth Circuit Rule 28.2.1, the Appellants, as governmental parties, need not furnish a certificate of interested persons.

/s/ *Marlayna M. Ellis*
**MARLAYNA M. ELLIS**
Assistant Attorney General
Attorney of Record for Appellee

## IDENTITY OF PARTIES AND COUNSEL

**Plaintiffs-Appellees:** Edgar Garces Robles, Ramiro Soto Altamirano, Juan Jose Soto Hernandez, and Rodolfo Ruiz de la Cruz

**Trial and Appellate Counsel for Plaintiffs-Appellees:**

David A. Donatti*
Ashley Alcantara Harris
Adriana Cecilia Pinon
ACLU Foundation of Texas
P.O. Box 8306
Houston, Texas 77288

Celin Carlo-Gonzalez
Ainsley McMahon
Darren S. Teshima
Jess I. Gonzalez Valenzuela
Miranda Rutherford
Stanley Young
Covington & Burling LLP
The New York Times Building; 620 Eighth Avenue
New York, New York 10018-1405
3000 El Camino Real, 5 Palo Alto Square
Palo Alto, California 94306-2112
Salesforce Tower; 415 Mission St., Suite 5400
San Francisco, California 94105-2533
*Lead Counsel

**Defendants-Appellants:** Ronny Taylor, John Cirone, Maria Ramirez, and Felipe Gonzalez

**Trial and Appellate Counsel for Defendants-Appellants Taylor, Cirone, Ramirez, and Gonzalez:**

Marlayna M. Ellis
Assistant Attorney General
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548

**Defendants-Appellants:** Joe Frank Martinez, Brad Coe, and Ricardo Alvarado

**Trial and Appellate Counsel for Defendants-Appellants Martinez, Coe, and Alvarado:**

Scott M. Tschirhart
Bojoquez Law Firm, PC
11675 Jollyville Road
Suite 300
Austin, Texas 78759

## STATEMENT REGARDING ORAL ARGUMENT

Defendants-Appellants Taylor, Gonzalez, Ramirez, and Cirone respectfully request oral argument. Because the sole issue on appeal is whether the district court improperly denied qualified immunity to Defendants-Appellants, oral argument will aid the Court's decisional process in determining whether their various alleged individual actions, standing alone, were objectively unreasonable and violated clearly established law.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ............................................................. II

IDENTITY OF PARTIES AND COUNSEL ................................................................. III

STATEMENT REGARDING ORAL ARGUMENT ...................................................... V

TABLE OF CONTENTS ............................................................................................ VI

TABLE OF AUTHORITIES ....................................................................................... IX

STATEMENT REGARDING JURISDICTION ........................................................... 1

ISSUES PRESENTED ................................................................................................. 1

STATEMENT OF THE CASE ..................................................................................... 1

    I.    APELLEES' FACTUAL ALLEGATIONS REGARDING
        OLS DETENTIONS. ....................................................................................... 1

    II.   THE SPECIFIC ALLEGATIONS AGAINST APPELLANTS
        TAYLOR, CIRONE, RAMIREZ, AND GONZALEZ. ............................... 4

    III.  APPELLEES ARRESTS, DETENTIONS, AND LEGAL
        CLAIMS. .......................................................................................................... 6

      A.    Garces Robles sues Appellant Cirone. ........................................................ 6

      B.    Soto Hernandez and Soto Altamirano sue Appellants Taylor
          and Ramirez. ................................................................................................... 7

      C.    Ruiz de la Cruz sues Appellee Gonzalez ................................................... 10

    IV.  PROCEDURAL BACKGROUND ................................................................. 12

SUMMARY OF THE ARGUMENT ............................................................................ 14

STANDARD OF REIVEW .......................................................................................... 16

ARGUMENT ................................................................................................ 16

    A.    The district court erred in finding Taylor violated Soto Hernandez and Soto Altamirano's clearly established right to timely release because the complaint fails to allege Taylor's personal knowledge of the disposition of their charges, that he consciously disregarded their right to release, and that he failed to act promptly in response. ................................ 16

        1.    The complaint fails to adequately allege that Taylor knew Soto Hernandez and Soto Altamirano were entitled to release on September 14, 2021 .................................................... 19

        2.    The complaint fails to adequately allege that Taylor failed to act promptly in response to the September 14, 2021, letter. ........................................................................................ 21

    B.    The district court erred in denying Taylor qualified immunity by relying on generalized propositions of law. ................................................. 24

    C.    The district court erred in finding Gonzalez, Ramirez, and Cirone violated Appellees' constitutional right to timely release when Appellees failed to identify the *specific* policy each Appellant implemented that purportedly resulted in their delayed release or that Appellants had knowledge that *their* policies caused the constitutional violations ................................ 27

        1.    The complaint fails to allege facts that Gonzalez knew his policies caused overdetention, and instead alleges that Alvarado caused Ruiz de la Cruz's overdetention by failing to process his paperwork until 14 days after he entered his plea. ...................................................................................... 29

        2.    The complaint fails to allege with specificity facts that Ramirez's policies caused Soto Hernandez and Soto Altamirano's overdetention and that she knew, or should have known, her policies caused overdetention. ..................................... 32

        3.    The complaint fails to allege with specificity facts that Cirone's policies caused Garces Robles's overdetention and that he knew, or should have known, his policies caused overdetention. ........................................................................ 34

D.    The district court erred in denying qualified immunity to
Gonzalez, Ramirez, and Cirone when it failed to separately
address each individual's qualified immunity claim. ................................... 36

PRAYER ........................................................................................................... 40

CERTIFICATE OF COMPLIANCE ............................................................ 411

CERTIFICATE OF SERVICE ....................................................................... 41

# TABLE OF AUTHORITIES

*Cases*

*Anderson v. Pasadena Indep. Sch. Dist.,*
  184 F.3d 439 (5th Cir.1999) ................................................................. 34

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ........................................................................... 16

*Backe v. LeBlanc,*
  691 F.3d 645 (5th Cir. 2012) ............................................................... 27

*Baker v. Putnal,*
  75 F.3d 190 (5th Cir. 1996).................................................................. 34

*Barcenas, et al., v. McCraw, et al.,*
  No. 1:22-CV-397-RP, 2024 WL 420157(W.D. Tex. Feb. 5, 2024) ........................... 32

*Batyukova v. Doege,*
  994 F.3d 717 (5th Cir. 2021) ............................................................... 27

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544(2007) .......................................................................17, 20

*Brown v. Callahan,*
  623 F.3d 249 (5th Cir. 2010) ............................................................... 24

*Brown v. Miller,*
  519 F.3d 231(5th Cir. 2008)................................................................. 16

*Carswell v. Camp,*
  54 F.4th 307(5th Cir. 2022) ................................................................ 16

*Connick v. Thompson,*
  563 U.S. 51 (2011) ........................................................................... 18

*Crittindon v. LeBlanc,*
  37 F.4th 177 (5th Cir. 2022) ........................................................19, 23, 24

*Darden v. City of Fort Worth,*
  880 F.3d 722 (5th Cir. 2018) ............................................................... 36

*Estate of Davis ex rel. McCully v. City of N. Richland Hills,*
  406 F.3d 375 (5th Cir. 2005) ...........................................................18, 19

*Harvey v. Andrist,*
  754 F.2d 569 (5th Cir. 1985) ............................................................... 17

*Jackson v. City of Hearne,*
  959 F.3d 194 (5th Cir. 2020) ............................................................... 27

*Jason v. Tanner,*
  938 F.3d 191 (5th Cir. 2019) ............................................................... 38

*Joseph v. Bartlett,*
  981 F.3d 319 (5th Cir. 2020) ............................................................... 36

*Kovacic v. Villarreal,*
   628 F.3d 209 (5th Cir. 2010) ................................................................ 24

*Marlowe v. LeBlanc,*
   2022 WL 2101523, (5th Cir. June 10, 2022) (per curiam) .......................... 22

*McNeal v. Leblanc,*
   90 F.4th 425 (5th Cir. 2024) ................................................................. 39

*Morgan v. Swanson,*
   659 F.3d 359(5th Cir. 2011) ................................................................. 16

*Morrow v. Meachum,*
   917 F.3d 870
   (5th Cir. 2019) .................................................................................. 25

*Mullenix v. Luna,*
   577 U.S. 7, (2015) ............................................................................. 39

*Oliver v. Scott,*
   276 F.3d 736 (5th Cir. 2002) ............................................................ 17, 23

*Pearson v. Callahan,*
   555 U.S. 223 (2009) ........................................................................... 24

*Pena v. City of Rio Grande City,*
   879 F.3d 613 (5th Cir. 2018) ................................................................ 34

*Plotkin v. IP Axess Inc.,*
   407 F.3d 690 (5th Cir. 2005) ................................................................ 20

*Porter v. Epps,*
   659 F.3d 440 (5th Cir. 2011) ............................................................ 18, 19

*Ramirez v. Escajeda,*
   921 F.3d 497(5th Cir. 2019) ................................................................. 16

*Rogers v. Jarrett,*
   63 F.4th 971 (5th Cir. 2023) ................................................................ 27

*Thompkins v. Belt,*
   828 F.2d 298 (5th Cir. 1987) ................................................................ 17

*Thompson v. Steele,*
   709 F.2d 381(5th Cir. 1983) ................................................................ 17

*White v. Pauly,*
   137 S. Ct. 548 (2017) ......................................................................... 24

**Statutes**

42 U.S.C. § 1983 ................................................................................. 12

## STATEMENT REGARDING JURISDICTION

This Court has jurisdiction over this interlocutory appeal pursuant to 28 U.S.C.

§ 1291 and the collateral order doctrine because Appellants appeal the district court's

order denying them qualified immunity.

## ISSUES PRESENTED

1. Whether the district court erred in finding Taylor violated Soto Hernandez's and Soto Altamirano's constitutional right to timely release because they were not in Taylor's legal *or* physical custody when entitled to release and did not allege that Taylor had personal knowledge of the disposition of their charges.

2. Whether the district court erred in denying Taylor qualified immunity where the Complaint concedes that Taylor regularly forwarded correspondence about overdetention to the appropriate officials, demonstrating his lack of deliberate indifference.

3. Whether the district court erred in finding Gonzalez, Ramirez, and Cirone violated Appellees' constitutional right to timely release because Appellees did not allege their release paperwork was delayed when it was received by Appellants and failed to identify the *specific* policy each Appellant implemented that purportedly resulted in their delayed release.

4. Whether the district court erred in denying qualified immunity to Gonzalez, Ramirez, and Cirone where Appellees made only conclusory allegations about their purported policies and non-specific factual allegations that failed to demonstrate each individual's deliberate indifference to Appellees' overdetention.

## STATEMENT OF THE CASE

## I. APELLEES' FACTUAL ALLEGATIONS REGARDING OLS DETENTIONS.

Appellees Edgar Garces Robles, Ramiro Soto Altamirano, Juan Jose Soto

Hernandez, and Rodolfo Ruiz de la Cruz (collectively, "Appellees"), sued Joe Frank

1

Martinez, the Sheriff of Val Verde County ("Sheriff Martinez"), Val Verde County, Brad Coe, the Sheriff of Kinney County ("Sheriff Coe"), Kinney County, Ricardo "Rick" Alvarado, the Kinney County Clerk ("Alvarado"), and Recana Solutions, LLC ("Recana"), a private government contracting and staffing entity (collectively, "Defendants"), in addition to Appellees for purported overdetention. ROA.27-30. Appellees allege that the Defendants knowingly and intentionally adopted and implemented policies, practices and customs that directly resulted in their overdetention. ROA.43.

Appellees are residents of Mexico that were arrested for misdemeanor trespass in Texas's Val Verde and Kinney Counties pursuant to an initiative known as Operation Lone Star ("OLS"). ROA.22-23, 25-27. They provide the following allegations about their arrests and detention. After their arrests, Appellees were held in the Val Verde Temporary Processing Center ("VVTPC"), which was created to process individuals arrested pursuant to OLS. ROA.25-27. Following intake processing, and pursuant to the legal authority of either the Val Verde or Kinney County Sheriff, individuals were transferred to the Texas Department of Criminal Justice's ("TDCJ's") Segovia or Briscoe Units pending disposition of their criminal charges. ROA.35-36.

Appellees assert that they were detained after they were legally entitled to release. ROA.23-24. Appellees allege the release process for individuals arrested pursuant to OLS is different than that of other arrestees. ROA.44. Appellants also allege that the release process differs between Val Verde and Kinney County.

### 1. *Val Verde County.*

In Val Verde County, release orders are sent from the court to the VVTPC. ROA.44. The VVTPC *and/or* Sheriff Martinez send the release orders to the TDCJ prison holding the person. ROA.27, 44. The TDCJ warden has the release paperwork signed by the person to be released, and then sends the executed release paperwork back to the VVTPC for review. ROA.44. The VVTPC delivers the release paperwork to Sheriff Martinez, who then instructs TDCJ to release the individual. ROA.44. Appellees allege that this "complicated" release process had the "predictable and demonstrated consequence of causing [Appellees] and other individuals" arrested pursuant to OLS to be overdetained. ROA.45. Appellees allege that Sheriff Martinez designed and implemented this "circuitous and delayed process." ROA.44.

### 2. *Kinney County.*

In Kinney County, Alvarado is responsible for finalizing plea paperwork by stamping it, filing it for the record, and returning it to the Kinney County Court for transmission to Sheriff Coe. ROA.46. Appellees allege that Alvarado has a policy, custom, and/or practice of delay in stamping plea paperwork, which causes further delay in the release process because paperwork cannot be transmitted until the clerk stamps it. ROA.46.

Once Sheriff Coe receives the paperwork, he sends it to the VVTPC administrators, and "someone at the VVTPC" sends the release orders to the TDCJ prison in which the person to be released is held. ROA.47. The TDCJ warden has the

release paperwork signed by the person to be released and delivers the signed release paperwork back to the VVTPC. ROA.47. The VVTPC processes the signed release paperwork and returns it to Sheriff Coe. ROA.48. Appellees allege that Sheriff Coe implemented and oversaw this process, which had the "known and obvious consequence of causing individuals" to be overdetained. ROA.48.

However, Appellees allege that Sheriff Coe's receipt of release paperwork does not guarantee release, as he purportedly creates further delays by contacting Immigration and Customs Enforcement ("ICE") to see if ICE had ever issued a detainer against the individual, and if they would like to do so now. ROA.48-49. If ICE does not wish to request a detainer, Sheriff Coe requests formal paperwork from ICE confirming the decision. ROA.49.

## II. THE SPECIFIC ALLEGATIONS AGAINST APPELLANTS TAYLOR, CIRONE, RAMIREZ, AND GONZALEZ.

Appellant Ronny Taylor was hired by the Texas Department of Emergency Management ("TDEM") to help design, administer, and operate the VVTPC, including its intake and release procedures. ROA.30. Taylor independently operated the VVTPC between July 2021 and September 2021. ROA.30. From September 2021 through November 2021, however, Recana worked *with* Taylor and the TDEM in the administration and operation of the VVTPC. ROA.30. After November 2021, Recana independently operated the VVTPC. ROA.30. Appellees allege that Taylor *and* Recana were responsible for creating and implementing internal policies for processing the

4

detention and release of individuals detained under OLS. ROA.52. Specifically, they were responsible for reviewing and processing release paperwork and sending paperwork to the TDCJ wardens and Kinney and Val Verde County Sheriffs. ROA.52. Appellees allege that Taylor and Recana created and implemented policies at the VVTPC that resulted in release paperwork being processed untimely. ROA.52. Finally, Appellees allege that Taylor and Recana's policies were "applicable" to their release and caused their overdetention. ROA.52.

Appellants John Cirone, Maria Ramirez, and Felipe Gonzalez were wardens at TDCJ's Segovia and/or Briscoe Units. ROA.29. Ramirez was the Senior Warden at the Briscoe Unit between January 2021 and December 2021 and Cirone became the Senior Warden at the Briscoe Unit in January 2022. ROA.29. Gonzalez was the Senior Warden at the Segovia Unit during all relevant times. ROA.29. Appellees contend the TDCJ wardens, as "jail administrators," were responsible for "ensuring that persons in their custody were timely released," and as supervisory officials, were responsible for creating and implementing internal policies for processing the release of OLS detainees and coordinating the transportation and transfer of OLS detainees. ROA.50-51. The release procedures included reviewing and processing release paperwork, arranging for detained individuals to sign their release paperwork, sending the signed paperwork to the VVTPC, and coordinating transportation and transfer of custody. ROA.50 Appellees allege the TDCJ wardens' policies resulted in release paperwork being processed untimely and caused their overdetention. ROA.51.

Appellees allege that Taylor and Recana "regularly forwarded correspondence about overdetention" to Cirone, Ramirez, and Gonzalez. ROA.37-38. They claim that Cirone, Ramirez, and Gonzalez also "regularly received complaints about overdetention from people detained." ROA.38. Appellees contend that, in addition to this "factual notice," overdetention was "sufficiently widespread" that these Appellants "should have known about the overdetention of people in their custody." ROA.38.

## III.  APPELLEES ARRESTS, DETENTIONS, AND LEGAL CLAIMS.

### A.  Garces Robles sues Appellant Cirone.

Garces Robles was arrested for misdemeanor trespass in Val Verde County on September 30, 2021. ROA.38. After finding probable cause, a magistrate ordered Garces Robles to be detained at the Briscoe Unit. ROA.25. On January 10, 2022, Garces Robles's charge was "dropped," and the court issued an order directing his release. ROA.38-39. Garces Robles does not allege Cirone knew that he was entitled to release on January 10, 2022, or that his paperwork, once received by Cirone, was ever delayed. ROA.38-43.

On January 28, 2022, his attorney contacted "staff" at the Briscoe Unit, TDCJ, the VVTPC, and the Val Verde County Attorney and demanded his immediate release. ROA.39. Again, Garces Robles does not allege Cirone was contacted on January 28, 2022, or that Cirone knew of his overdetention. ROA.39. Nonetheless, the next day, on January 29, 2022, Garces Robles was released. ROA.39. Garces Robles alleges he was overdetained for 19 days. ROA.38.

Garces Robles sues Appellant Cirone, who was the Senior Warden at the Briscoe Unit in January 2022, for violating his Fourth Amendment and Fourteenth Amendment Due Process rights. ROA.29, 53, 55.[1] He asserts Cirone was a "supervisory official" who was "responsible for formulating, implementing, and executing policies, practices, and customs applicable to Briscoe Prison." ROA.29. Garces Robles argues that Cirone's "policies, practices, and/or customs" were applicable to his release and caused his overdetention because Cirone purportedly "created and implemented policies at Briscoe Prison that resulted in release paperwork being processed days to weeks after being received." ROA.51. He also argues that Cirone was "deliberately indifferent" to the overdetention of individuals detained under OLS resulting from his policies. ROA.52. Cirone is sued *solely* in his individual capacity. ROA.29.

## B. Soto Hernandez and Soto Altamirano sue Appellants Taylor and Ramirez.

Soto Hernandez was arrested alongside his son, Soto Altamirano, for misdemeanor trespass on August 30, 2021. ROA.25-26, 39-41. Both men were taken to the VVTPC, where a magistrate found probable cause to detain them at the Briscoe Unit. ROA.25-26. On September 14, 2021, the Val Verde Country Attorney declined to prosecute Soto Hernandez and Soto Altamirano; and he sent a letter to Taylor, explaining that the charges against Soto Hernandez and Soto Altamirano were

---

[1] Garces Robles also sues Defendants Martinez, Recana, and Val Verde County for violating his Fourth and Fourteenth Amendment rights. ROA.53-6. Additionally, he sues Recana for negligence. ROA.57.

dismissed, and recommending their immediate release. ROA.39-41. They do not allege that Ramirez was aware of their entitlement to release. ROA.39-41.

On October 26, 2021, Soto Hernandez's and Soto Altamirano's attorney contacted staff at Sheriff Martinez's office, TDCJ, and Taylor at the VVTPC to ask that they be released. ROA.39-41. But Soto Hernandez and Soto Altamirano do not allege that their attorney contacted Ramirez. ROA.39-41.That same day, Soto Hernandez and Soto Altamirano were released. ROA.39-41. Soto Hernandez and Soto Altamirano allege they were overdetained for 42 days. ROA.40.

Soto Altamirano and Soto Hernandez sue Taylor for violating their Fourth Amendment and Fourteenth Amendment Due Process rights. ROA.53, 55.[2] They assert that Taylor was responsible for "formulating, implementing, and executing policies, customs, and practices applicable to the VVTPC" when he independently operated the VVTPC from July 2021 until September 2021, and from September 2021 through the end of November 2021, when he operated the VVTPC "in conjunction" with Recana. ROA.30. They further assert that Taylor *and* Recana "were, pursuant to the procedures of Defendant Counties, responsible for creating and implementing internal policies for processing the detention and release of individuals detained." ROA.52. Soto Altamirano and Soto Hernandez allege that Taylor *and* Recana created

---

[2] Soto Altamirano and Soto Hernandez also sue Defendants Martinez, Ramirez, Recana, and Val Verde County for violating their Fourth and Fourteenth Amendment rights. ROA.53-56. Additionally, they sue Recana for negligence. ROA.57.

and implemented policies that resulted in release paperwork not being processed until days or weeks after it was received. ROA.52. Soto Altamirano and Soto Hernandez assert that Taylor and Recana's policies "were applicable to all [Appellees'] release and caused all [Appellees'] overdetention." ROA.52.

Soto Altamirano and Soto Hernandez also argue that Taylor was "deliberately indifferent" to the overdetention of individuals detained under OLS resulting from his policies. ROA.52. They state that Taylor testified at a hearing in June 2022 that it was "not uncommon" to receive emails from defense attorneys that their clients had not been released. ROA.37. However, Taylor testified that he normally forwarded these emails to the county responsible for that individual's detention and to TDCJ employees at the Briscoe and Segovia Prisons. ROA.37. Taylor also allegedly forwarded correspondence to Recana from defense attorneys stating that their clients were being overdetained. ROA.38. Taylor is sued *solely* in his individual capacity. ROA.30.

Soto Altamirano and Soto Hernandez also sue Ramirez, who was the Senior Warden at the Briscoe Unit from January 2021 through December 2021, for violating their Fourth Amendment and Fourteenth Amendment Due Process rights. ROA.29, 53, 55. They assert she was a "supervisory official responsible for devising, implementing, and executing policies, practices, and customs applicable to Briscoe Prison" and was responsible for "ensuring that all individuals in TDCJ's physical custody at Briscoe Prison were lawfully detained." ROA.29. They further assert that Ramirez's "policies, practices, and/or customs" were applicable to their release and

caused their overdetention because Ramirez purportedly "created and implemented policies at Briscoe Prison that resulted in release paperwork being processed days to weeks after being received." ROA.51.

Soto Altamirano and Soto Hernandez allege Ramirez "was aware of the overdetention of multiple individuals" because she received "documentation from the Kinney County Attorney dismissing the cases," general "correspondence about overdetention from attorneys," and an "order from a judge directing that she release individuals to their attorneys." ROA.52. Ramirez is sued *solely* in her individual capacity. ROA.29.

### C. Ruiz de la Cruz sues Appellee Gonzalez

Rodolfo Ruiz de la Cruz was arrested for misdemeanor trespass in Kinney County on September 24, 2021. ROA.42. He was taken to the VVTPC, where the magistrate found probable cause to detain him. ROA.26-27. Ruiz de la Cruz was ultimately detained at the Segovia Unit, which was supervised by Warden Gonzalez. ROA.27, 29.

In advance of Ruiz de la Cruz's anticipated plea, his court-appointed defense attorney sent his plea documents to Kinney County officials, including the County Attorney. ROA.42. On January 12, 2022, Ruiz de la Cruz entered a plea of no contest and was sentenced to 80 days of incarceration with credit for time served. ROA.42. Six days later, his court-appointed counsel received an email from Ruiz de la Cruz's family

stating that he was still in custody and informed the Kinney County Attorney and the Border Prosecution Unit Attorney. ROA.42.

On January 20, 2022, Ruiz de la Cruz's counsel alerted the Kinney County and Border Prosecution Unit attorneys to Ruiz de la Cruz's continued detention. ROA.42. On January 20, 2022, Ruiz de la Cruz's counsel again followed up with the attorneys, who said they were looking into the situation. ROA.42. On January 24, 2022, Ruiz de la Cruz's counsel emailed the two attorneys. ROA.42. On January 25, 2022, Ruiz de la Cruz's counsel appeared in court and made a record concerning Ruiz de la Cruz's overdetention. ROA.43. Later that day, Ruiz de la Cruz was released. ROA.43.

While he was overdetained, Ruiz de la Cruz claims he "alerted a jailer to the fact that he was supposed to have been released from custody because he had served his full sentence." ROA.43. However, he does not claim that he alerted Gonzalez about his entitlement to release. ROA.43. Ruiz de la Cruz alleges that Alvarado did not stamp his paperwork and file it until 14 days after his plea was entered. ROA.46. Ruiz de la Cruz states no specific allegations other than against Alvarado. ROA.46. Ruiz de la Cruz alleges he was detained 13 days longer than his sentence. ROA.42.

Ruiz de la Cruz sues Warden Gonzalez, who was the Senior Warden of the Segovia Prison, for violating his Fourth and Fourteenth Amendment Due Process

rights. ROA.29, 53, 55.[3] He asserts Gonzalez was a "supervisory official" who was "responsible for formulating, implementing, and executing policies, practices, and customs applicable to the Segovia Prison" and had a "duty to ensure all individuals in TDCJ's physical custody at Segovia Prison are lawfully detained." ROA.29-30.

Ruiz de la Cruz argues that Gonzalez's "policies, practices, and/or customs" were applicable to his release and caused his overdetention because Gonzalez purportedly "created and implemented policies at Segovia Prison that resulted in release paperwork being processed days to weeks after being received." ROA.51. He also argues that Gonzalez was "deliberately indifferent" to the overdetention of individuals detained under OLS resulting from his policies. ROA.52. Gonzalez is sued *solely* in his individual capacity. ROA.30.

## IV.   PROCEDURAL BACKGROUND

Appellees filed suit under 42 U.S.C. § 1983 alleging that Appellants[4] violated their Fourth and Fourteenth Amendment rights when they were detained after their charges were dismissed or their sentences had expired. ROA.23-24, 53, 55. Appellees did not challenge their underlying arrests, detentions, or dispositions of their charges, but specifically challenged solely their alleged overdetentions. ROA.24.

---

[3] Ruiz de la Cruz also sues Defendants Coe, Alvarado, Recana, and Kinney County for violating his Fourth and Fourteenth Amendment rights. ROA.53-56. Additionally, he sues Recana for negligence. ROA.57.

[4] Appellees also sued Sheriff Martinez, Val Verde County, Sheriff Coe, Kinney County, Kinney County Clerk Alvarado, and Recana alleging constitutional and negligence-based causes of action related to their purported overdetentions. ROA.27-30.

Appellants[5] filed motions to dismiss, asserting their entitlement to qualified immunity in response to Appellees' global and non-specific allegations against them because Appellees failed to state plausible Fourth Amendment and Fourteenth Amendment claims and did not show that Appellants' alleged actions were objectively unreasonable in light of clearly established law. ROA.283-294, 315-324, 477-507.

The district court denied Appellants' motions to dismiss, finding they were not entitled to qualified immunity. ROA.680-711. The district court found Appellees alleged a pattern of overdetention resulting from the OLS release process and that "all Defendants knew that individuals were overdetained." ROA.699. In support, the district court noted that Taylor testified at a contempt hearing that it was "not uncommon" to receive emails from defense attorneys explaining that their clients were entitled to release and suffering ongoing overdetention and that Taylor regularly forwarded these emails to "TDCJ employees at Briscoe and Segovia Prisons." ROA.699.

The court noted that Ramirez, Cirone, and Gonzalez allegedly regularly received complaints about overdetention through the inmate grievance system. ROA.699. And "if that was not sufficient for Appellants to have notice of a pattern of overdetentions as a result of the OLS release policy," the court noted that Appellants "should have known about the overdetention of people in their custody" because Appellees alleged

---

[5] The other Defendants also filed motions to dismiss. ROA.155-176, 197-215, 382-398.

overdetention was "sufficiently widespread." ROA.699. The district court held that the purportedly complex OLS release process, as described in the complaint, "inherently suggests" each individual knew that OLS detainees were being regularly overdetained. ROA.699.

The district court held that Appellees sufficiently pled that the individual Defendants were not entitled to qualified immunity because they violated Appellees' clearly established constitutional rights to timely release through either direct or supervisory liability. ROA.703-704. The court also held that "all Defendants acted objectively unreasonably in failing to address the constitutionally deficient release policy for OLS detainees, which they knew was causing a pattern of overdetentions." ROA.705.

## SUMMARY OF THE ARGUMENT

The district court erred in denying qualified immunity to Appellants. In its order denying Appellants qualified immunity, the district court only analyzed Alvarado and Taylor's actions and did not address the alleged individual conduct specifically pleaded against Gonzalez, Ramirez, and Cirone. Although there is a clearly established right to be timely released from custody, the district court failed to evaluate whether the alleged actions or inactions by Gonzalez, Ramirez, and Cirone violated clearly established law. The district court utilized generalized propositions of law to conclude their actions were objectively unreasonable, despite well-established case law placing the burden to negate qualified immunity on the plaintiff and requiring the violative nature of the *particular*

14

conduct to be clearly established. The Appellees were required to defeat Gonzalez, Ramirez, and Cirone's assertion of qualified immunity with "equal specificity," and the district court did not hold them to their burden.

While the district court found "Taylor had fair warning that his failure to act upon notice that Soto Hernandez and Soto Altamirano were being overdetained would result in their continued overdetentions," the district court discounted Appellees' failure to allege that Taylor *received* the September 14, 2021, letter from the Val Verde County Attorney about the dismissal of their charges and recommendation for their release, *and* that he consciously disregarded it. If Taylor did not receive this letter, he simply could not have been on notice that Soto Hernandez and Soto Altamirano were entitled to release.

Critically, the complaint only alleges that this letter was *sent* to Taylor, and that Soto Hernandez and Soto Altamirano were not released until October 26, 2021. The complaint does not allege Taylor failed to act; it only presumes that he must have failed to act because they were not released earlier. The district court ignored the complaint's allegation that Taylor admitted in a hearing it was "not uncommon" to receive emails about overdetention, and that he *regularly* forwarded those emails to the appropriate officials for responses and action. The district court also discounted the complaint's allegation that when Soto Hernandez and Soto Altamirano's attorney contacted Taylor directly, they were released that same day. By turning a blind eye to the complaint's own allegations, the district court disregarded the stringent standard applied for alleging

deliberately indifferent conduct. It also rejected Fifth Circuit precedent establishing that if an official becomes aware of a risk that an individual is being overdetained and takes prompt action, he does not disregard a known risk.

For these reasons, the district court's denial of qualified immunity should be reversed.

## STANDARD OF REIVEW

Under the collateral order doctrine, this Court has jurisdiction to review orders denying qualified immunity. *Carswell v. Camp*, 54 F.4th 307, 310 (5th Cir. 2022). A district court's denial of qualified immunity is reviewed de novo. *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008). This Court's review is based only on the specific factual allegations of the complaint and all reasonable inferences that can be drawn from them. *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc).

At the motion to dismiss stage, this Court is restricted to determining "'whether the facts pleaded establish' 'a violation of clearly-established law.'" *Ramirez v. Escajeda*, 921 F.3d 497, 501 (5th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 673 (2009)). In other words, a proper appeal asks "whether the district court erred in concluding as a matter of law that officials are not entitled to [qualified immunity] on a given set of facts." *Id.* at 499.

## ARGUMENT

**A. The district court erred in finding Taylor violated Soto Hernandez's and Soto Altamirano's clearly established right to timely release because the complaint fails to allege Taylor's personal knowledge of the disposition of**

**their charges, that he consciously disregarded their right to release, and that he failed to act promptly in response.**

A pleading "does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, <u>556 U.S. at 678</u> (citing *Bell Atlantic Corp. v. Twombly*, <u>550 U.S. 544, 555</u> (2007)). A complaint is insufficient "if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (internal citations omitted). "Plaintiffs suing governmental officials in their individual capacities ... must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusional assertions[.] The plaintiff must allege specific facts giving rise to the constitutional claims." *Oliver v. Scott*, <u>276 F.3d 736, 741</u> (5th Cir. 2002) (citation omitted). Qualified immunity is a defendant specific inquiry: a Plaintiff must plead facts substantiating how each defendant, "through the official's own individual actions, has violated the Constitution." *Iqbal*, <u>556 U.S. at 676</u>.

Importantly, "[section] 1983 does not give a cause of action based on the conduct of subordinates." *Thompson v. Steele*, <u>709 F.2d 381, 382</u> (5th Cir. 1983). Courts have held that a supervisory official is not liable under §1983 unless "there exists either 1) his personal involvement in the constitutional deprivation, or 2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Thompkins v. Belt*, <u>828 F.2d 298, 303-04</u> (5th Cir. 1987) (citing *Harvey v. Andrist*, <u>754 F.2d 569, 572</u> (5th Cir. 1985)). A supervisory official may be held liable if

he "affirmatively participates in the acts that cause the constitutional deprivation." *Porter v. Epps*, 659 F.3d 440, 447 (5th Cir. 2011).

Additionally, a plaintiff must show the defendant's deliberate indifference to plaintiff's constitutional rights, which requires evidence that an official "disregarded a known or obvious consequence of [*their*] action[s]." *Id.* at 446–47 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)) (emphasis added). Deliberate indifference is "a stringent standard of fault." *Connick*, 563 U.S. at 61. "Deliberate indifference requires a showing of more than negligence or even gross negligence." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005).

The district court found Taylor "affirmatively acted to cause [Soto Hernandez's and Soto Altamirano's] overdetention because the complaint alleged that the Val Verde County Attorney sent a letter to Taylor on September 14, 2021, notifying him that Val Verde County was declining to prosecute Soto Hernandez and Soto Altamirano and recommending their immediate release, but they were not released until October 26, 2021." ROA.696-97. Based on this letter, the district court found "Taylor had notice that Soto Hernandez and Soto Altamirano were at risk of overdetention, yet he took no action." ROA.697. The district court found Appellees sufficiently pled that Taylor disregarded the risk of overdetention to Soto Hernandez and Soto Altamirano by failing to act promptly in response to the letter. ROA.698. As such, the district court held Appellees sufficiently stated an overdetention claim of direct supervisory liability against Taylor. ROA.698.

**1. The complaint fails to adequately allege that Taylor knew Soto Hernandez and Soto Altamirano were entitled to release on September 14, 2021.**

The district court discounted the critical distinction between the complaint's allegation that the September 14, 2021, letter from the Val Verde County Attorney was *sent* to Taylor, rather than *received* by Taylor. The district court acknowledged Taylor's argument that the complaint failed to plead that he actually received the letter but found the "pleadings as to the letter are sufficient to survive a 12(b)(6) standard." ROA.698.

Without alleging that Taylor actually received the letter, Taylor could not have affirmatively participated in acts that caused the overdetention of Soto Hernandez and Soto Altamirano because he would have had no knowledge of their entitlement to release. "A supervisory official may be held liable if he 'affirmatively participates in the acts that cause the constitutional deprivation.'") ( *Crittindon v. LeBlanc,* 37 F.4th 177, 188 (5th Cir. 2022), *cert. denied*, 144 S. Ct. 90, 217 L. Ed. 2d 21 (2023) ((citing *Porter*, 659 F.3d at 446). Affirmative participation requires allegations showing actual knowledge of the Appellees' entitlement to release.

Additionally, "[f]or an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Est. of Davis*, 406 F.3d at 381. By alleging only that the letter was sent to Taylor, without alleging any facts that he received or was otherwise actually aware of this letter, Appellees failed to allege that Taylor was aware of facts from which an inference could be drawn that a substantial

risk of harm existed to Soto Hernandez and Soto Altamirano, and that he also drew the inference. Similarly, he could not have consciously disregarded their right to release if he did not know their charges had been resolved. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679. The mere possibility of misconduct is insufficient to overcome Taylor's entitlement to qualified immunity. *Id.*

Moreover, in September 2021, when the letter was purportedly sent to Taylor at the VVTPC, he was operating the VVTPC in conjunction *with* Recana. ROA.30. The complaint claims that *both* Taylor *and* Recana were responsible for reviewing and processing release paperwork and sending paperwork to the TDCJ wardens and Kinney and Val Verde County Sheriffs. ROA.52. Even accepting as true Appellees' assertion that the September letter was sent to Taylor, there is no reasonable inference that Taylor, as opposed to Recana, received, or reviewed this letter. The district court holding otherwise was an unwarranted factual inference. *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) (noting that while courts must accept all factual allegations as true, they "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions").

Thus, the district court mistakenly held that Taylor had notice Soto Hernandez and Soto Altamirano were at risk of overdetention. Appellees' failure to sufficiently plead Taylor's notice that these individuals were at risk of overdetention entitles Taylor

to qualified immunity, and the district court's opinion to the contrary should be reversed.

### 2. The complaint fails to adequately allege that Taylor failed to act promptly in response to the September 14, 2021, letter.

Even assuming Taylor received the September 14, 2021, letter, the complaint is notably devoid of additional facts alleging that Taylor indeed took no action to effectuate the release of Soto Hernandez and Soto Altamirano and somehow "failed to act promptly," as the district court concluded. ROA.697. Instead, the complaint states only that the September 14, 2021, letter was sent to Taylor and that Soto Hernandez and Soto Altamirano were not released until October 26, 2021. ROA.39-41. But this bare-bones timeline says nothing of Taylor's action or inaction.

The lack of specific factual allegations is critical because the complaint details the purported release process in Val Verde County where Soto Hernandez and Soto Altamirano were detained as follows: release orders are sent from the court to the VVTPC; the VVTPC *and/or* Sheriff Martinez send the release orders to the TDCJ prison holding the person; the TDCJ warden has the release paperwork signed by the person to be released, and then sends the executed release paperwork back to the VVTPC for review; and then the VVTPC delivers the release paperwork to Sheriff Martinez, who then instructs TDCJ to release the individual. ROA.27, 44. And Soto Hernandez and Soto Altamirano simultaneously sue Martinez, Ramirez, and Recana, claiming they also caused their ovedetention. ROA.53.

While the district court correctly noted that multiple defendants can be responsible for violations of constitutional rights pursuant to Section 1983 – which Appellants never disputed – the district court appears to have misunderstood Appellants' reasoning for highlighting Appellees' multi-faceted assertions of causal responsibility. ROA.700-701 ("The Court disagrees with Defendants' arguments that only one state actor may be liable for Plaintiffs' overdetentions"). Appellants were emphasizing the lack of pleading specificity as to *each* individual Defendants' alleged conduct by relying on group-pleading. The lack of pleading specificity is made clearer when the complaint contains no factual allegations regarding Taylor's alleged actions, while also simultaneously claiming that Martinez, Ramirez, and Recana, who played their own purported roles in the release process described above, affirmatively took actions that caused their delayed release. Because Appellees have chosen to sue Taylor *solely* in his individual capacity, they must plead facts substantiating that *each* defendant, "through the official's own individual actions, has violated the Constitution." *Marlowe v. LeBlanc*, 2022 WL 2101523, at *2 (5th Cir. June 10, 2022) (per curiam). They did not do so with Taylor.

The complaint never alleges that Taylor failed to send the release orders to TDCJ's Briscoe Unit.[6] Rather, Appellees – and the district court – assumed that Taylor must have failed to act merely because Soto Hernandez and Soto Altamirano were not

---

[6] And the complaint alleges that *both* Taylor *and* Recana were responsible sending paperwork to the TDCJ wardens and Val Verde County Sheriff. ROA.52.

released on September 14, 2021. However, Taylor can only be deliberately indifferent if he disregarded a known or obvious consequence of *his* actions. *See Crittindon*, 37 F.4th at 188 (noting liability only arises when the officials act, or fail to act, with "deliberate indifference," a "disregard [for] a known or obvious consequence of [their] action[s].""). The assertion that Soto Hernandez and Soto Altamirano were not released on September 14, 2021, without additional allegations regarding Taylor's specific conduct, does not sufficiently plead facts that Taylor "failed to act promptly" as opposed to some other defendant failing to act promptly. *See Oliver,* 276 F.3d at 741 (holding conclusional assertions are insufficient for plaintiffs suing governmental officials in their individual capacities because they must allege specific facts giving rise to constitutional claims).

In fact, the complaint's later allegations indicate that Taylor took prompt action on October 26, 2021, when Appellees' attorney contacted Taylor directly. ROA.40. That same day, Soto Hernandez and Soto Altamirano were released. ROA.40. The complaint also states that it was "not uncommon" to receive emails from defense attorneys explaining that their clients were entitled to release and suffering ongoing overdetention. ROA.37. But Taylor testified he normally forwarded their concerns to the county responsible for that individual's detention and to TDCJ employees at the Briscoe and Segovia Prisons. ROA.37. These are allegations that demonstrate Taylor took prompt action and therefore did not disregard a known risk to Soto Hernandez and Soto Altamirano. "If an official becomes aware of a risk that an individual is being overdetained and takes prompt action, he does not disregard a known risk." *See*

23

*Crittindon*, 37 F.4th at 188. For this additional reason, the district court's denial of
Taylor's entitlement to qualified immunity should be reversed.

### B. The district court erred in denying Taylor qualified immunity by relying on generalized propositions of law.

Once a state official has asserted qualified immunity, the burden shifts to the
plaintiff to show that qualified immunity does not bar recovery. *Kovacic v. Villarreal*, 628
F.3d 209, 211 (5th Cir. 2010). The qualified immunity analysis has two steps, which can
be taken in either order: (1) whether a constitutional right would have been violated on
the facts alleged, and (2) "whether the defendant's actions violated 'clearly established
statutory or constitutional rights of which a reasonable person would have known.'"
*Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "[C]learly established law should not be
defined at a high level of generality," but must instead be "particularized to the facts of
the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017). Finally, the court "asks whether
qualified immunity is still appropriate because the defendant's actions were objectively
reasonable in light of law which was clearly established at the time of the disputed
action." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (internal quotations
omitted).

The district court noted that the Fifth Circuit has repeatedly held that individuals
have a clearly established right to their timely release from custody, citing *Crittindon*.
ROA.704. Because the district court found that Taylor violated Soto Hernandez's and
Soto Altamirano's right to timely release through direct liability, it reasoned that the

question was then "whether [Taylor] acted objectively unreasonably." ROA.704-05. The court then concluded that all individual Defendants' actions were objectively unreasonable. ROA.705.

However, the district court provided only one line of analysis in its denial of qualified immunity to Taylor, reasoning that "Taylor had fair warning that his failure to act upon notice that Soto Hernandez and Soto Altamirano were being overdetained would result in their continued overdetentions." ROA.705. In support of denying qualified immunity to all individual Defendants, the district court heavily relied on this Court's decision in *Crittindon*, which found prison officials who knew of delays in release paperwork had "fair warning that their failure to address this delay would deny prisoners their immediate or near-immediate release." ROA.704-5.[7]

Although there is a clearly established right to be timely released from prison, that alone is insufficient to strip Taylor of his entitlement to qualified immunity. The court must "frame the constitutional question with specificity and granularity." *Morrow v. Meachum*, 917 F.3d 870, 874–75 (5th Cir. 2019). Neither Appellees nor the district court pointed to a case where an officer was held to have violated the constitution based on vague allegations substantially similar to those levied against Taylor. None of the

---

[7] There is a disparity between the "fair warning" language the district court cited, where this portion of the *Crittindon* opinion speaks to the relevance of fair warning in relation to supervisory liability based on the failure to adopt policies, and not a direct participation theory of liability. *See Crittindon*, 37 F.4th at 188. The fair warning relevant to Taylor, whom the court found directly participated in the violation of rights, is whether he was specifically aware of a risk of overdetention to Soto Hernandez and Soto Altamirano, and whether he took prompt action in response to the risk such that he did not *disregard* a known risk. *Id.*

alleged acts that warranted this Court's denial of qualified immunity in *Crittindon* are present here.

For example, this Court denied qualified immunity to Griffin, the Director of the Pre-Classification Department for the Louisiana Department of Public Safety and Corrections ("DPSC") and Stagg, the Assistant Secretary of DPSC, as to certain plaintiffs when they were notified by the detainees' mothers that their sons had been overdetained for nearly three months, discussed their overdetentions amongst themselves, and took no further action until 17 days later. *Crittindon*, 37 F.4th at 189. This Court concluded these actions were not prompt responses to the detainees' risk of overdetention. *Id.* However, as to other plaintiffs-detainees, this Court held Griffin and Stagg promptly contacted the relevant parties to obtain the necessary paperwork, calculate a release date, and release them after learning of their entitlement to release. *Id.* This Court did not find such conduct to be deliberately indifferent. *Id.* Similarly, this Court did not find deliberate indifference where there was no specific awareness that a particular individual was being overdetained. *Id.*

Taylor's alleged actions relating to Soto Hernandez and Soto Altamirano closely mirror the claims dismissed in *Crittindon* rather than the claims that were permitted to move forward. For the reasons articulated above, the district court should have granted Taylor qualified immunity because the complaint failed to adequately allege that Taylor knew Soto Hernandez and Soto Altamirano were entitled to release on September 14,

2021, and failed to adequately allege that Taylor failed to act promptly in response to the September 14, 2021, letter.

To pierce qualified immunity, plaintiffs are required to point to "a case or body of relevant case law in which an officer acting under similar circumstances was held to have violated the Constitution." *Batyukova v. Doege*, 994 F.3d 717, 726 (5th Cir. 2021) (cleaned up). A "generalized proposition of law is not enough." *Rogers v. Jarrett*, 63 F.4th 971, 977 (5th Cir. 2023). Courts are also required to apply the modified motion-to-dismiss standard that governs in the context of qualified immunity. *See Jackson v. City of Hearne*, 959 F.3d 194, 201 (5th Cir. 2020) (holding the plaintiff has the burden of establishing a constitutional violation and overcoming a QI defense).

The district court's reliance on *Crittindon* as described above was nothing more than a generalized proposition of law. The district court erred in denying Taylor qualified immunity because Appellees failed to plead specific facts that allowed it to draw the reasonable inference that Taylor violated their constitutional right to release and failed to hold them to their burden to defeat his qualified immunity defense with "equal specificity." *See Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) ("plaintiff must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a [qualified immunity] defense with equal specificity.").

**C. The district court erred in finding Gonzalez, Ramirez, and Cirone violated Appellees' constitutional right to timely release when Appellees failed to identify the *specific* policy each Appellant implemented that purportedly**

**resulted in their delayed release or that Appellants had knowledge that *their* policies caused the constitutional violations.**

Supervisory officials may be liable under § 1983 for their failure to adopt policies if that failure causally results in a constitutional injury. *Porter*, 659 F.3d at 446. Liability only arises when the officials act, or fail to act, with "deliberate indifference," meaning a "disregard [for] a known or obvious consequence of [their] action[s]." *Id.* (internal quotation marks and citation omitted). Plaintiffs must introduce evidence that each defendant had "actual or constructive notice" that their failure to adopt policies would result in constitutional violations. *Id.* at 447. This typically requires showing notice of "[a] pattern of similar constitutional violations" due to deficient policies, permitting the inference that defendants deliberately chose policies causing violations of constitutional rights. *Id.* There must be an "obvious" causal link between the failure to adopt a particular policy and that same constitutional violation. *Id.* at 446. "A failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights." *Id.*

The complaint claims that Gonzalez, Ramirez, and Cirone implemented policies in their supervisory positions as wardens that caused Appellees' overdetention at the Briscoe and Segovia units. ROA.51. Appellees allege that these non-descript policies "resulted in release paperwork being processed days to weeks after being received." ROA.51. The district court held Gonzalez, Ramirez, and Cirone liable, not because they affirmatively participated in Appellees' overdetention, but because it found Appellees

sufficiently pled that the individual Defendants had "notice of a pattern of overdetentions." ROA.699. The district court gave significant weight to the alleged notice *all* Defendants had about overdetention, generally. ROA.699. But it gave no consideration to whether Gonzalez, Ramirez, and Cirone had knowledge that *their* specific policies, or their failure to enact certain policies, caused individuals to be overdetained.

> **1. The complaint fails to allege facts that Gonzalez knew his policies caused overdetention, and instead alleges that Alvarado caused Ruiz de la Cruz's overdetention by failing to process his paperwork until 14 days after he entered his plea.**

Ruiz de la Cruz was ultimately detained at the Segovia Unit, which was supervised by Gonzalez. ROA.27, 29. On January 12, 2022, Ruiz de la Cruz entered a plea of no contest and was sentenced to 80 days of incarceration with credit for time served. ROA.42. Ruiz de la Cruz was not released on January 12, and his court-appointed counsel contacted the Kinney County Attorney and the Border Prosecution Unit Attorney about his continued detention. ROA.42.[8] Ruiz de la Cruz was released on January 25, 2022. ROA.43. Ruiz de la Cruz alleges he was detained 13 days longer than his sentence. ROA.42.

---

[8] The complaint does not allege that Ruiz de la Cruz's counsel ever contacted Gonzalez about his overdetention. ROA.42-43. Ruiz de la Cruz claims he "alerted a jailer to the fact that he was supposed to have been released from custody because he had served his full sentence," but does not contend that this individual was Gonzalez. ROA.43.

Ruiz de la Cruz asserts Gonzalez was a "supervisory official" who was "responsible for formulating, implementing, and executing policies, practices, and customs applicable to the Segovia Prison" and had a "duty to ensure all individuals in TDCJ's physical custody at Segovia Prison are lawfully detained." ROA.29-30. He alleges that Gonzalez's "policies, practices, and/or customs" were applicable to his release and caused his overdetention because Gonzalez "created and implemented policies at Segovia Prison that resulted in release paperwork being processed days to weeks after being received." ROA.51. He also argues that Gonzalez was "deliberately indifferent" to the overdetention of individuals detained under OLS resulting from his policies. ROA.52. However, Ruiz de la Cruz does not allege his paperwork, once received by Gonzalez, was delayed. ROA.42-3.

In fact, Ruiz de la Cruz specifically alleges that Alvarado—a separately named defendant in this case—did not stamp his paperwork and file it for the record until 14 days after his plea was entered on January 12, 2022. ROA.42, 46. According to the complaint, Alvarado is the first step in the release process; meaning the overdetention occurred because the paperwork was not timely sent to Gonzalez, not because Gonzalez failed to act promptly after receiving notice of the need to release Ruiz de la Cruz. ROA.46.

Per Appellees' own allegations, Alvarado was allegedly responsible for finalizing plea paperwork by stamping it, filing it for the record, and returning it to the Kinney County Court for transmission to Sheriff Coe; once Sheriff Coe receives the paperwork,

he sends it to the VVTPC administrators, and "someone at the VVTPC" sends the release orders to the TDCJ prison in which the person to be released is held. ROA. 46-48. Only then does the TDCJ warden—in this case Gonzalez—have the release paperwork signed by the person to be released so that it can be signed and returned to the VVTPC. ROA.46-48.

Because Ruiz de la Cruz was allegedly overdetained for 13 days, there is no reasonable inference that Gonzalez delayed his paperwork or in any way caused his overdetention. Alvarado's 14-day delay in stamping his paperwork caused Ruiz de la Cruz's overdetention. Moreover, the only reasonable inference is that Gonzalez did act promptly upon receiving Ruiz de la Cruz's paperwork: he was released the same day that Alvarado stamped the paperwork and presumably then sent to it to Gonzalez.

Even ignoring Ruiz de la Cruz's failure to allege his paperwork was delayed once received by Gonzalez, and his own identification of Alvarado as the cause of his prolonged detention, Ruiz de la Cruz nonetheless fails to allege the *specific* policy Gonzalez purportedly implemented that "resulted in release paperwork being processed days to weeks after being received." The complaint, and the district court, rely only on the generalized assertion that Gonzalez was aware of overdetention, broadly speaking. But that is not the standard. Plaintiffs must plead specific policies that caused the constitutional violation, requiring them to plead such specific facts to survive a rule 12(b)(6) motion to dismiss claims against officials in their individual capacities. *Oliver*, 276 F.3d at 742-43; "[C]onclusory statements about the creation, direction, and

31

implementation of unconstitutional policies are not sufficient to state a claim." *Barcenas, et al., v. McCraw, et al.*, No. 1:22-CV-397-RP, 2024 WL 420157, at *6 (W.D. Tex. Feb. 5, 2024).

The complaint did not sufficiently allege a specific policy that Gonzalez created or implemented, or that he failed to create or implement, that resulted in Ruiz de la Cruz's alleged overdetention. The district court's decision should be reversed because Gonzalez is entitled to qualified immunity from Ruiz de la Cruz's overdetention claim.

> **2. The complaint fails to allege with specificity facts that Ramirez's policies caused Soto Hernandez and Soto Altamirano's overdetention and that she knew, or should have known, her policies caused overdetention.**

Soto Hernandez and Soto Altamirano were detained at the Briscoe Unit. ROA.25-26. On September 14, 2021, the Val Verde County Attorney declined to prosecute Soto Hernandez and Soto Altamirano; and he sent a letter to Taylor, explaining the charges against Soto Hernandez and Soto Altamirano were dismissed, and recommending their immediate release. ROA.39-41. On October 26, 2021, Soto Hernandez's and Soto Altamirano's attorney contacted staff at Sheriff Martinez's office, TDCJ, and Taylor at the VVTPC to ask that they be released. ROA.39-41. That same day, Soto Hernandez and Soto Altamirano were released. ROA.39-41. Soto Hernandez and Soto Altamirano allege they were overdetained for 42 days. ROA.40.

Notably, the complaint fails to allege Ramirez's personal knowledge of their prolonged detention. ROA.39-41. The complaint only alleges that the Val Verde

County Attorney sent a letter to Taylor on September 24, 2021. ROA.39-41. It does not allege that the letter was sent to Ramirez; Ramirez was otherwise aware of the letter; or Ramirez was aware of circumstances entitling Appellees to immediate release as of September 24, 2021.

Instead, Soto Hernandez and Soto Altamirano sue Ramirez purely because of her supervisory role at the Briscoe Unit. ROA.29. They assert she was a "supervisory official responsible for devising, implementing, and executing policies, practices, and customs applicable to Briscoe Prison" and was responsible for "ensuring that all individuals in TDCJ's physical custody at Briscoe Prison were lawfully detained." ROA.29. They assert that Ramirez's "policies, practices, and/or customs" were applicable to their release and caused their overdetentions because Ramirez purportedly "created and implemented policies at Briscoe Prison that resulted in release paperwork being processed days to weeks after being received." ROA.51. Soto Altamirano and Soto Hernandez allege Ramirez "was aware of the overdetention of multiple individuals" because she received "documentation from the Kinney County Attorney dismissing the cases," general "correspondence about overdetention from attorneys," and an "order from a judge directing that she release individuals to their attorneys." ROA.52.

But the complaint sets forth the purported process that exists *before* Ramirez would become aware that an individual is entitled to release, effectively negating the claims against Ramirez. Release orders are sent from the court to the VVTPC and then

the VVTPC and/or Sheriff Martinez send the release orders to the TDCJ prison holding the person. ROA.27, 44. But, like the claims asserted against Gonzalez, Soto Altamirano and Soto Hernandez fail to allege that their release paperwork was delayed after it was received by Ramirez. ROA.39-41.

Their vague allegation that Ramirez's policies harmed them, when they fail to allege a *specific* policy that Ramirez created or implemented, or that she failed to create or implement, does not satisfy the heightened pleading standard to state a claim against Ramirez in her individual capacity. *Baker v. Putnal*, 75 F.3d 190, 194 (5th Cir. 1996) (requiring the plaintiff to allege specific facts giving rise to a constitutional violation); *see also Pena v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018) (holding a complaint's "description of a policy or custom and its relationship to the underlying constitutional violation ... cannot be conclusory; it must contain specific facts"); *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir.1999) ("Plaintiffs suing governmental officials in their individual capacities, however, must allege specific conduct giving rise to a constitutional violation."). Appellees' failure to identify a policy created—or not created—by Ramirez that resulted in their overdetention warrants reversal of the district court's denial of qualified immunity to Ramirez.

### 3. The complaint fails to allege with specificity facts that Cirone's policies caused Garces Robles's overdetention and that he knew, or should have known, his policies caused overdetention.

Garces Robles was detained at the Briscoe Unit. ROA.25. On January 10, 2022, Garces Robles's charge was "dropped," and the court issued an order directing he be

34

released. ROA.38-39. On January 28, 2022, his attorney contacted "staff" at the Briscoe Unit, TDCJ, the VVTPC, and the Val Verde County Attorney and demanded his immediate release. ROA.39. The next day, on January 29, 2022, Garces Robles was released. ROA.39. Garces Robles alleges he was overdetained for 19 days. ROA.38.

Notably, the complaint fails to allege Cirone's personal knowledge of Garces Robles' prolonged detention or that he was entitled to release on January 10, 2022. ROA.38-43. More importantly, Garces Robles fails to allege that his release was actually delayed even after Cirone received the paperwork for his release. ROA.38-43. Finally, Garces Robles's vague allegation that Cirone's policies harmed him, when he fails to allege a *specific* policy that Cirone created or implemented, or that he failed to create or implement, does not satisfy the heightened pleading standard to state a claim against Ramirez in her individual capacity. *See Baker*, 75 F.3d at 194; *Pena*, 879 F.3d at 621; *Anderson*, 184 F.3d at 443.

Existing case law is clear that deliberate indifference is a "stringent standard of fault" and requires the officials to have disregarded a known or obvious consequence of *their* actions. *See Porter*, 659 F.3d at 446–47; *see also Connick*, 563 U.S. at 61. Awareness that individuals were generally allegedly being overdetained does not mean that Gonzalez, Ramirez, or Cirone subjectively knew *their* policies were the cause of overdetention, and yet each still chose not to act. For these reasons, the district court erred in finding Gonzalez, Ramirez, and Cirone plausibly violated Appellees'

constitutional right to timely release. The district court's denial of qualified immunity to each of them should be reversed.

### D. The district court erred in denying qualified immunity to Gonzalez, Ramirez, and Cirone when it failed to separately address each individual's qualified immunity claim.

This Court has made clear that the qualified immunity analysis should be conducted for each defendant individually, not on a group-wide basis. "In cases where the defendants have not acted in unison, qualified immunity claims should be addressed separately for each individual defendant." *Darden v. City of Fort Worth*, 880 F.3d 722, 731 (5th Cir. 2018) (quotation omitted); *see also Joseph v. Bartlett*, 981 F.3d 319, 325 & n.7 (5th Cir. 2020) ("To the extent [*Darden*] could be read as suggesting that collective analysis is appropriate for defendants acting in unison, we don't read it that way.").

Nonetheless, the district court devoted only one sentence to Gonzalez, Ramirez, and Cirone's qualified immunity, and it did so by lumping them together with all the other individual Defendants in this lawsuit. ROA.705. In discussing the individual Defendants' liability, the district court simply stated, "all of the individual Defendants, including Alvarado and Taylor, acted objectively unreasonably in failing to address the constitutionally deficient release policy for OLS detainees, which they knew was causing a pattern of overdetentions." ROA.705. The district court grouped *all* Defendants together, without saying anything about which defendant knew what at what time—let alone identifying the allegations that demonstrated each Defendant's actions or inactions amounted to a constitutional violation—and without explaining how it could

infer anything about any particular defendant's consciousness, as required for deliberate indifference. Because the district court did not properly analyze each individual's qualified immunity entitlement, the district court wrongly denied qualified immunity to Gonzalez, Ramirez, and Cirone.

If the district court had separately analyzed each individual's entitlement to qualified immunity, it nevertheless would not have been able to deny qualified immunity to Gonzalez, Ramirez, or Cirone. Once a state official has asserted qualified immunity, the burden shifts to the plaintiff to show that qualified immunity does not bar recovery. *Kovacic,* 628 F.3d at 211. As explained above, Gonzalez, Ramirez, and Cirone did not violate Appellees' constitutional rights. Moreover, their actions did not violate clearly established law, nor were their vaguely alleged actions objectively unreasonable. *See Brown*, 623 F.3d at 253.

As discussed above, the district court merely held that "all of the individual Defendants, including Alvarado and Taylor, acted objectively unreasonably in failing to address the constitutionally deficient release policy for OLS detainees, which they knew was causing a pattern of overdetentions." ROA.705. The district court noted that the Fifth Circuit has repeatedly held that individuals have a clearly established right to their timely release from custody, citing *Crittindon.* ROA.704.

Although there is a clearly established right to be timely released from prison, that legal conclusion alone is insufficient to pierce qualified immunity. *Morrow,* 917 F.3d at 874–75 (noting the court must "frame the constitutional question with specificity and

37

granularity."). "[C]learly established law should not be defined at a high level of generality," but must instead be "particularized to the facts of the case." *White*, 137 S. Ct. at 552. The complaint does not even point to a common cause as the source of Appellees' overdetention. Looking at the allegations, it is clear that each individual alleges their own set of circumstances, unrelated to Gonzalez, Ramirez, and Cirone.

While the complaint alleged that Gonzalez, Ramirez, and Cirone knew of overdetention in general, the complaint does not allege they *each* had subjective knowledge that *their* respective policies caused the overdetention. Nor does it demonstrate they had the ability to adopt policies to cure the alleged deficiencies yet purposefully chose not to do so. "[T]he Supreme Court in *Connick* required that only very similar violations could jointly form a pattern." *See Jason v. Tanner*, 938 F.3d 191, 198 (5th Cir. 2019); *see also Connick*, 563 U.S. at 62 ("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."). There is no clear pattern demonstrated by Appellees' complaint; to the contrary, each alleges a variation of what and who allegedly caused their overdetention.

*Crittindon* is drastically different than the facts alleged here. This Court in *Crittindon* focused on the knowledge of high-ranking officials—not wardens or jail administrators—within the Louisiana DPSC, of a study revealing that 2,252 prisoners were annually held past their release date. 37 F.4th at 187. Years after, and despite their awareness of this study, the DPSC officials could not point to a single effort that any

of them took to address the delays, despite having the authority by virtue of their high-ranking positions to adopt policies addressing the delays. *Id.* The opinion also discussed that "Defendants knew not just of delay, but that there was on average, a month-long delay." *Id.* at 188. Nonetheless, *Crittindon* recognized that liability only arises when the officials act, or fail to act, with "deliberate indifference," meaning a "disregard [for] a known or obvious consequence of [their] action[s]." *Id.* at 186 (quoting *Porter*, 659 F.3d 446) (alterations in original).[9]

But here, Appellees allege that Taylor and Recana "regularly forwarded correspondence about overdetention" to Cirone, Ramirez, and Gonzalez. ROA.37-38. They claim that Cirone, Ramirez, and Gonzalez also "regularly received complaints about overdetention from people detained." ROA.38. Appellees contend that, in addition to this "factual notice," overdetention was "sufficiently widespread" that Appellants "should have known about the overdetention of people in their custody." ROA.38 (referencing an NBC news article titled "Hundreds ordered released as Texas border operation comes under fire"). But these allegations say nothing of Cirone, Ramirez, and Gonzalez's subjective knowledge that *their* policies caused overdetention. Rather, Appellees own allegations demonstrate prompt release once the wardens presumably became aware of their overdetentions.

---

[9] This Court's recent decision in *McNeal v. Leblanc*, 90 F.4th 425 (5th Cir. 2024), *cert. denied*, --- S.Ct. ----, 2024 WL 4427170 (Mem) (Oct. 7, 2024), is not to the contrary.

Neither Appellees nor the district court pointed to a case where an officer was held to have violated the constitution based on the same vague allegations levied against Cirone, Ramirez, and Gonzalez. *See Mullenix v. Luna*, <u>577 U.S. 7, 11</u> (2015) (holding the plaintiff must show that the law "sufficiently clear" at that time "that every reasonable official would have understood that what he [was] doing violate[d] that right."). *Crittindon* does not clearly establish a constitutional violation in this case. For these reasons, the district court incorrectly denied qualified immunity as to Cirone, Ramirez, and Gonzalez.

## PRAYER

The district court's decision should be reversed.

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**JAMES LLOYD**
Deputy Attorney General for
Civil Litigation

**KIMBERLY GDULA**
Chief, General Litigation Division

*/s/ Marlayna M. Ellis*
**MARLAYNA M. ELLIS**
Assistant Attorney General
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Phone: (512) 475-3079
marlayna.ellis@oag.texas.gov

40

## CERTIFICATE OF COMPLIANCE

I certify that this brief was prepared with Microsoft Word and uses Garamond, which is a proportionally spaced typefaces, in 14-point height for body text and 12-point text for footnotes. I further certify that the portions of the brief subject to Fed. R. App. P.  contain 9565 words, as determined by Word's word-count function.

*/s/ Marlayna M. Ellis*
**MARLAYNA M. ELLIS**
Assistant Attorney General

## CERTIFICATE OF SERVICE

On November 21, 2024, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

*/s/ Marlayna M. Ellis*
**MARLAYNA M. ELLIS**
Assistant Attorney General