Case No. 24-50595

UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

Edgar Garces Robles; Ramiro Soto Altamirano; Juan Jose Soto Hernandez;
Rodolfo Ruiz De La Cruz,

Plaintiffs – Appellees

V.

Joe Frank Martinez In His Individual Capacity, Maria Ramirez, In Her Individual
Capacity, John Cirone In His Individual Capacity, Felipe Gonzalez,In His
Individual Capacity, Ronny Taylor, In His Individual Capacity, Brad Coe, In His
Individual Capacity, Ricardo Alvarado, In His Individual Capacity, also known as
Rick Alvarado

Defendants – Appellants

On Appeal from the United States District Court for the
Western District of Texas, Civil Action No. 1:23-CV-981

**APPELLEES' BRIEF**

David A. Donatti
Adriana Pinon
Ashley Harris
ACLU of Texas
P.O. Box 12905
Austin, TX 78711-2905
(713) 942-8146
ddonati@aclutx.org
apinon@aclutx.org
aharris@aclutx.org

Stanley Young
Robert Haslam
Miranda Rutherford
Covington & Burling LLP
3000 El Camino Real
Palo Alto, CA 94306
(650) 632-4704
syoung@cov.com
rhaslam@cov.com
mrutherford@cov.com

*Counsel for Appellees*

Darren Teshima
Jess Gonzalez Valenzuela
Covington & Burling LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105
(415) 591-6000
dteshima@cov.com
jgonzalezvalenzuela@cov.com

Celin Carlo-Gonzalez
Ainsley McMahon
Covington & Burling LLP
The New York Times Building
600 Eighth Ave.
New York, NY 10018-1405
(212) 841-1088
ccarlogonzalez@cov.com
amcmahon@cov.com

**CERTIFICATE OF INTERESTED PERSONS**

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. Defendants-Appellants: Brad Coe, in his individual capacity as Sheriff of Kinney County; Ricardo Alvarado, in his individual capacity as County Clerk of Kinney County; Frank Martinez, in his individual capacity as Sheriff of Val Verde County.

2. Counsel for Defendants-Appellants: Scott Michael Tschirhart of Bojorquez Law Firm, PC.

3. Defendants: Kinney County; and Val Verde County.

4. Counsel for Defendants: Scott Michael Tschirhart of Bojorquez Law Firm, PC.

5. Defendants-Appellants: John Cirone, in his individual capacity as Warden of Briscoe Prison under the Texas Department of Criminal Justice ("TDCJ"); Felipe Gonzalez, in his individual capacity as Warden of Segovia Prison under TDCJ; Maria Ramirez, in her individual capacity as Warden of Briscoe Prison under TDCJ; Ronny Taylor, in his individual capacity as an employee of the Texas Division of Emergency Management.

6.      Counsel for Defendants-Appellants: Marlayna M. Ellis, Ken Paxton, Brent Webster, Ralph Molina, James Lloyd, and Kimberly Gdula of the Office of the Attorney General of the State of Texas.

7.      Defendant: Recana Solutions, LLC.

8.      Counsel for Defendant: Douglas C. Bracken of Kane Russell Coleman Logan PC.

9.      Plaintiffs-Appellees: Edgar Garces Robles, Ramiro Soto Altamirano, Juan Jose Soto Hernandez, Rodolfo Ruiz De La Cruz.

10.     Counsel for Plaintiffs-Appellees: David Donatti, Adriana Piñon, Ashley Harris of ACLU of Texas; Stanley Young, Robert Haslam, Darren Teshima, Celin Carlo-Gonzalez, Miranda Rutherford, Ainsley McMahon, Jess Gonzalez Valenzuela of Covington & Burling LLP.


                                         */s/ David A. Donatti*
                                         David A. Donatti

                                         *Counsel for Appellees*

## STATEMENT REGARDING ORAL ARGUMENT

Under Fifth Circuit Rule 28.2.3 and Federal Rule of Appellate Procedure 34(a)(1), the Plaintiffs-Appellees request oral argument. The Appellants collaterally appeal the denial of multiple motions to dismiss asserting absolute and qualified immunity defenses and an oral argument could assist the Court in distinguishing the Appellants' factual and legal objections and rendering its decision on the district court's order.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. vi

JURISDICTIONAL STATEMENT ....................................................................... 1

STATEMENT OF THE ISSUES............................................................................ 2

LEGAL STANDARD............................................................................................ 3

STATEMENT OF THE CASE ............................................................................... 3

I.      The "Catch and Jail" Program. ................................................................. 3

II.     The Appellants Each Played Pivotal Roles in Operationalizing the
        Catch and Jail Program.............................................................................. 5

III.    Release Processes for the Catch and Jail Program Were Unique and
        Unreasonable. ............................................................................................ 7

        A.      Kinney County's Release Process...................................................... 8

        B.      Val Verde County's Release Process. ................................................ 9

IV.     Each Appellant Contributed to Delays in Releasing Catch and Jail
        Detainees................................................................................................... 11

V.      Each Appellant Had Notice That Their Practices Were Regularly
        Causing People to Be Overdetained. .......................................................... 11

VI.     The Appellants Detained the Plaintiffs Well After They Were Entitled
        to Release................................................................................................... 13

        A.      Soto Altamirano and Soto Hernandez................................................ 13

        B.      Garces Robles ..................................................................................... 13

        C.      Ruiz de la Cruz ................................................................................... 14

VII.    The Plaintiffs Filed Suit, and the District Court Denied the
        Defendants' Motions to Dismiss. ................................................................ 14

SUMMARY OF THE ARGUMENT ...................................................................... 16

ARGUMENT .................................................................................................. 19

I.    Kinney County Clerk Alvarado Is Not Entitled to Judicial Immunity......... 19

II.   No Appellant Is Entitled to Qualified Immunity.......................................... 22

      A.   The Right to Timely Release Is Clearly Established. ........................ 23

      B.   The District Court Correctly Held That the Plaintiffs
           Sufficiently Alleged Supervisory Liability Claims............................ 25

           1.   Each Appellant Failed to Adopt Policies Ensuring
                Release Paperwork Was Processed on Time. .......................... 26

           2.   Sheriffs Coe and Martinez Violated Their Duties to
                Ensure the Plaintiffs' Timely Release. .................................... 35

           3.   Sheriff Coe Implemented an Illegal Indefinite Detention
                Policy. ...................................................................................... 39

      C.   Alvarado and Taylor Are Directly Liable for the Plaintiffs'
           Overdetention. .................................................................................. 40

           1.   Alvarado Violated Plaintiff Ruiz de la Cruz's
                Constitutional Rights Because Alvarado Knew That Ruiz
                de la Cruz Was Entitled to Release and Yet Waited 14
                Days to Stamp and File His Plea Paperwork. .......................... 40

           2.   Taylor Violated Plaintiffs Soto Hernandez and Soto
                Altamirano's Clearly Established Rights Because He
                Knew They Were Entitled to Release but Did Nothing for
                42 Days. .................................................................................... 42

III.  The Plain Text of Section 1983 Does Not Support Qualified
      Immunity...................................................................................................... 44

CONCLUSION............................................................................................... 48

CERTIFICATE OF COMPLIANCE.................................................................... 49

CERTIFICATE OF SERVICE ............................................................................ 50

# TABLE OF AUTHORITIES

**Cases**                                                                     **Page(s)**

*Berry v. Baca,*
   379 F.3d 764 (9th Cir. 2004) ...........................................................39

*Bostock v. Clayton County,*
   590 U.S. 644 (2020)..........................................................................46

*Box v. Fluitt,*
   47 S.W.2d 1107 (Tex. Civ. App. 1932)............................................24

*Brass v. County of Los Angeles,*
   328 F.3d 1192 (9th Cir. 2003) ..........................................................39

*Brockenborough v. Melton,*
   55 Tex. 493 (1881)............................................................................21

*Brown v. Alabama Dep't of Corrs.,*
   2019 WL 4780801 (M.D. Ala. Sept. 30, 2019) .................................32

*Cherry Knoll, LLC v. Jones,*
   922 F.3d 309 (5th Cir. 2019) ............................................................33

*Clay v. Allen,*
   242 F.3d 679 (5th Cir. 2001) .....................................................19, 20

*Crittindon v. LeBlanc,*
   37 F.4th 177 (5th Cir. 2022) .....................................................*passim*

*Davis v. Hall,*
   375 F.3d 703 (8th Cir. 2004) ............................................................39

*Douthit v. Jones,*
   641 F.2d 345 (5th Cir. 1981) ............................................................25

*Evans v. Suter,*
   260 F. App'x. 726 (5th Cir. 2007) ....................................................21

*First Nat. Bank of Portales, N.M. v. McElroy,*
   51 Tex. Civ. App. 284 (1908).....................................................12, 21

*Foley v. Hughes*,
  116 F. App'x. 519 (5th Cir. 2004) .................................................................22

*Hankins v. Wheeler*,
  109 F.4th 839 (5th Cir. 2024) .......................................................................47

*Henzel v. Gerstein*,
  608 F.2d 654 (5th Cir. 1979) .........................................................................20

*Hicks v. LeBlanc*,
  81 F.4th 497 (5th Cir. 2023) ....................................................................*passim*

*Hueseman v. Prof. Compounding Ctrs. of Am., Inc.*,
  664 F. Supp. 3d 722 (W.D. Tex. 2023) ........................................................34

*Imbler v. Pachtman*,
  424 U.S. 409 (1976)........................................................................................44

*Iqbal v. Ashcroft*,
  556 U.S. 662 (2009)........................................................................................44

*James v. Sadler*,
  909 F.2d 834 (5th Cir. 1990) .........................................................................34

*Jauch v. Choctaw County*,
  874 F.3d 425 (5th Cir. 2017) ...................................................................39, 40

*Joe Hand Promotions, Inc. v. Lynch*,
  822 F. Supp. 2d 803 (N.D. Ill. 2011)............................................................34

*McBeath v. Campbell*,
  12 S.W.2d 118 (Tex. Comm'n App. 1929) ....................................24, 33, 34, 37

*McNeal v. LeBlanc*,
  90 F.4th 425 (5th Cir. 2024) .........................................................25, 30, 37, 38

*Morales v. Chadbourne*,
  793 F.3d 208 (1st Cir. 2015)..........................................................................39

*Parker v. LeBlanc*,
  73 F.4th 400 (5th Cir. 2023) ....................................................................*passim*

*Pierson v. Ray*
  386 U.S. 547 (1967)............................................................................44

*Price v. Montgomery County,*
  72 F.4th 711 (6th Cir. 2023) ...........................................................45

*Quirk v. Mustang Eng'g, Inc.,*
  143 F.3d 973 (5th Cir. 1998) ...........................................................20

*Ramirez v. Escajeda,*
  921 F.3d 497 (5th Cir. 2019) ...........................................29, 35, 41, 43

*Rheuark v. Shaw,*
  547 F.2d 1257 (5th Cir. 1977) .........................................................22

*Rogers v. Jarrett,*
  63 F.4th 971 (5th Cir. 2023) ...........................................................45

*Sims v. Adams,*
  537 F.2d 829 (5th Cir. 1976) ...........................................................25

*Turrentine v. Lasane,*
  389 S.W. 2d 336 (1965)...................................................................21

*U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.,*
  508 U.S. 439 (1993)..........................................................................46

*Vann v. Mazzant,*
  2021 WL 6098779 (N.D. Tex. Nov. 24, 2021) ...............................21

*Vasquez v. Bridgestone/Firestone, Inc.,*
  325 F.3d 665 (5th Cir. 2003) ...........................................................33

*Wheaton v. Peters,*
  33 U.S. 591 (1834)............................................................................46

*Whirl v. Kern,*
  407 F.2d 781 (5th Cir. 1969) .....................................................24, 36

*Williams v. Wood,*
  612 F.2d 982 (5th Cir. 1980) .....................................................19, 22

*Ziglar v. Abbasi*,
    582 U.S. 120 (2017)..............................................................44

**Statutes**

42 U.S.C. § 1983 ...........................................................*passim*

8 C.F.R. § 287.7 ....................................................................39

Civil Rights Act of 1871, ch. 22, § 1, 17 Stat. 13 (1871) ..................................45, 46

Tex. Admin. Code § 267.6(a) ................................................................7

Tex. Loc. Gov't Code § 192.006(a)......................................................6, 20

Tex. Loc. Gov't Code § 351.041 ...........................................................5

Tex. Loc. Gov't Code § 351.041(a)....................................................35, 37

Tex. Loc. Gov't Code § 351.041(b)..........................................................36

**Other Authorities**

Alexander A. Reinert, *Qualified Immunity's Flawed Foundation*, 111
    Cal. L. Rev. 201, 218-28 (2023) ........................................................45

# JURISDICTIONAL STATEMENT

The district court has federal-question jurisdiction over the Plaintiffs'

Section 1983 claims.  Although the Plaintiffs dispute that any Appellant is entitled

to immunity in defense of the Plaintiffs' claims and that government officials may

collaterally, unilaterally, and serially appeal denials of asserted immunity defenses,

the Plaintiffs acknowledge that the United States Supreme Court has sanctioned

such appeals as an exception to the final judgment rule.

# STATEMENT OF THE ISSUES

1. Whether, on a 12(b)(6) motion to dismiss, the district court correctly found that the Plaintiffs sufficiently pleaded that Appellant Kinney County Clerk Ricardo Alvarado was not entitled to absolute judicial immunity for failing for 14 days to timely perform the ministerial and routine act of stamping, filing, and transmitting plea paperwork as required under state law.

2. Whether, on a 12(b)(6) motion to dismiss, the district court correctly determined that Plaintiffs sufficiently pleaded that the Appellants were not entitled to qualified immunity for failing to adopt policies that would have prevented the Plaintiffs from being held in jail for thirteen, nineteen, and forty-two days after they became entitled to release, thereby violating the Plaintiffs' clearly established rights to timely release from custody.

3. Whether, on a 12(b)(6) motion to dismiss, the district court correctly determined that the Plaintiffs sufficiently pleaded that Appellants Alvarado and Taylor could not claim qualified immunity after knowing the Plaintiffs were overdetained and taking no action for 14 and 42 days, respectively.

# LEGAL STANDARD

When reviewing a denial of a motion to dismiss based on qualified immunity, the Court's analysis is jurisdictionally limited to determining "whether the district court erred in concluding as a matter of law that officials are not entitled to [qualified immunity] on a given set of facts *Hicks v. LeBlanc*, 81 F.4th 497, 502 (5th Cir. 2023) (alteration in original). The Court "accept[s] the factual allegations" in the Complaint "as true" and "do[es] not consider the correctness of the plaintiff's version of the facts." *Id.*

# STATEMENT OF THE CASE

## I. The "Catch and Jail" Program.

This case arises from each Appellant's pivotal role in the "catch and jail" program of "Operation Lone Star," an ongoing initiative announced in March 2021. ROA.32, ¶ 28.[1] The goal of this initiative was and remains to police and deter immigration to the United States between ports of entry. ROA.32, ¶ 29.

The catch and jail program began in June 2021. ROA.32, ¶ 29. As inaugural participants in the program, Kinney County and Val Verde County worked with state agencies and private entities to "catch" unauthorized immigrants, most often for alleged trespass offenses that would be misdemeanors but for serial state "disaster" declarations enabling sentencing enhancements, and

---

[1] All citations to the "ROA" are to the record on appeal.

then "jail" them in state prisons before transporting them to federal immigration officers.  ROA.32-33, ¶¶ 29-31.  Alongside county leadership, including defendant sheriffs, the state agencies and private entities establishing and participating in the program included the Texas Department of Criminal Justice ("TDCJ"), the Texas Division of Emergency Management ("TDEM"), the Texas Department of Public Safety, and Recana Solutions, LLC.  ROA.33, ¶ 30.

As related in the Complaint, Texas Governor Greg Abbott explained in September 2021 (the month most Plaintiffs were arrested) that "[w]hat we have done is we actually created additional jail cells and we created a court system down in South Texas.  We are arresting people coming across the border illegally, and we are jailing them in jails in the state of Texas, sending the message that if they come across the border in the state of Texas, they're not going to be caught and released like under the Biden administration, they're going to be spending time behind bars."  ROA.33, ¶ 30.

Under the operationalized catch and jail program, individuals who were arrested were, regardless of the county of arrest, transported to a temporary processing center (the Val Verde Temporary Processing Center, or "VVTPC") to be booked and magistrated.  ROA.33-34, ¶¶ 31, 33-34 & n.11.  Sheriffs, including Appellants Sheriff Brad Coe and Sheriff Frank Martinez, then sent letters to TDCJ requesting that TDCJ house the arrested individuals on the sheriff's behalf.

ROA.35 ¶ 40. Pre-trial detainees, including the Plaintiffs, subsequently were transported to Briscoe Prison, a state prison in Dilley, Texas, which was converted to exclusively house Operation Lone Star detainees. ROA.35, ¶¶ 39, 41. Individuals might then, as in the case of Plaintiff Ruiz de la Cruz, be taken to a second prison, Segovia Prison, in Edinburg, Texas, converted for the same exclusive purpose. ROA.35, ¶¶ 39, 42. Once a person's criminal proceedings concluded, they were transported to federal immigration officials, often with an intervening return trip to the VVTPC. ROA.36, ¶ 48.

## II.  The Appellants Each Played Pivotal Roles in Operationalizing the Catch and Jail Program.

The Appellants had unique and overlapping roles in the catch and jail program.

*Sheriffs Coe and Martinez.*  At all relevant times, Sheriff Coe was the County Sheriff of Kinney County, and Sheriff Martinez was the County Sheriff of Val Verde County. ROA.27-28, ¶¶ 13, 15. As "the keeper of the county jail," each sheriff was responsible for ensuring that individuals held under their custody, including in Briscoe Prison and Segovia Prison, were lawfully held. Tex. Loc. Gov't Code § 351.041. While the sheriff "may appoint a jailer to operate the jail and meet the needs of" those being held, the sheriff must "continue to exercise supervision and control over the jail." *Id*.; ROA.35, ¶ 40. As sheriffs acknowledged in the custody letters they sent to TDCJ, the county sheriff

"retain[ed] authority over time calculation and release" even though individuals are held in TDCJ custody.  ROA.35, ¶ 40.  Sheriffs Coe and Martinez were responsible for and had the power and authority to implement policies ensuring that individuals in their custody were timely released once the authority to hold them had expired. ROA.27-28, ¶¶ 13, 15.

**Kinney County Clerk Alvarado.**  At all relevant times, Appellant Ricardo Alvarado worked as the county clerk of Kinney County.  ROA.28, ¶ 16.  As the county clerk, Alvarado was "the custodian of the records" in criminal matters in Kinney County, required to "record each act and proceeding of the county court." Tex. Loc. Gov't Code § 192.006(a).  Alvarado had the power and authority to implement policies within the Kinney County Clerk's office to ensure it fulfilled its duties required by the Constitution and other applicable laws.  ROA.28, ¶ 16.

**Briscoe and Segovia Prison Wardens Ramirez, Cirone, and Gonzalez.**
Appellants Maria Ramirez, John Cirone, and Felipe Gonzalez served as senior wardens of the Briscoe and Segovia Prisons under TDCJ.  ROA.28-29, ¶¶ 18-20. Warden Ramirez was the senior warden of Briscoe Prison until approximately December 2021.  ROA.28, ¶ 18.  Warden Cirone took over as senior warden of Briscoe Prison on January 2, 2022.  ROA.28, ¶ 19.  Warden Gonzalez was at all relevant times the senior warden of Segovia Prison.  ROA.28-29, ¶ 20.  As the wardens of Briscoe Prison and Segovia Prison, which exclusively housed

Operation Lone Star detainees, ROA.35, ¶¶ 39-40, Wardens Ramirez, Cirone, and Gonzalez had the duty and the power to implement policies to ensure that individuals detained in their facilities, including the Plaintiffs, were released when they discharged their sentences, Tex. Admin. Code § 267.6(a); ROA.28-29, ¶¶ 18-20.

**Ronny Taylor.** Ronny Taylor was hired by TDEM to help design the VVTPC, including the VVTPC's processes involving the intake, transfer, and release of catch and jail arrestees. ROA.30, ¶ 21. Taylor operated the VVTPC jointly with Recana (a private government contractor retained as a jailer) from September 2021 through November 2021, when Recana began operating the VVTPC independently. ROA.30, 57 ¶¶ 21-22, 180. While he operated VVTPC, Taylor was responsible for and had the power and authority to implement policies ensuring that individuals held under the catch and jail program were timely released from custody. ROA.30, ¶ 21.

## III. Release Processes for the Catch and Jail Program Were Unique and Unreasonable.

Counties participating in the catch and jail program had distinct processes to facilitate the release of individuals in their legal custody. ROA.44, 47-48, ¶¶ 91-92, 115-117. Both Sheriffs Coe and Martinez implemented policies in their counties that were different from, slower, and less accurate than the procedures

7

used to release those arrested for conduct not targeted by the catch and jail program.  ROA.44, 48, ¶¶ 92, 116.

## A.    Kinney County's Release Process.

While always in Sheriff Coe's legal custody, individuals arrested as part of the catch and jail program in Kinney County followed the routes described above to Briscoe Prison and, possibly, as in Plaintiff de la Cruz's case, Segovia Prison. Once they were entitled to release (like when Plaintiff de la Cruz pled guilty to trespass in exchange for time already served), the procedure for releasing individuals held under Kinney County's authority, as described in Plaintiffs' Complaint, was as follows:

- **Step One:** Once a person had pleaded guilty, Alvarado received plea paperwork from the presiding court, stamped it, filed it for the record, and sent it to Sheriff Coe.  ROA.46, ¶¶ 101, 103.  The plea paperwork contained an individual's sentence and all the information necessary to determine the individual's release date.  ROA.46, ¶ 102.  The Plaintiffs allege that Alvarado imposed delay through a policy or practice of stamping, filing, and sending plea paperwork days to a week after receipt. ROA.46, ¶¶ 105-06.

- **Step Two:** Sheriff Coe sent release paperwork to the VVTPC.  ROA.47-48, ¶ 115.

- **Step Three:** Staff at the VVTPC, including or supervised by Taylor, then sent the release paperwork to either Briscoe or Segovia Prison, wherever the person to be released was held.  ROA.47-48, ¶ 115.

- **Step Four:** The TDCJ warden of that prison, including the Appellant wardens, arranged for the paperwork to be physically signed by the person to be released.  ROA.47-48, ¶ 115.

- **Step Five:** A TDCJ employee physically delivered the signed release paperwork back to the VVTPC.  ROA.47-48, ¶ 115.

- **Step Six:** Staff at VVTPC processed the (now-signed) release paperwork and then physically returned the paperwork to Sheriff Coe.  ROA.47-48, ¶ 115.

- **Step Seven:** After Sheriff Coe received the signed release paperwork, he decided whether to instruct the relevant prison to release the individual.  ROA.47-48, ¶ 115.  In addition to the steps described above, the Plaintiffs allege that Sheriff Coe had a policy or practice of further delaying release not only where a person was subject to an Immigration and Customs Enforcement ("ICE") detainer but even when they were not.  ROA.48-49, ¶¶ 119-20.  Plaintiffs allege that the additional delays caused by this policy or practice could exceed the 48-hour detention permitted under an ICE detainer.  ROA.48-49, ¶ 120.

- **Step Eight:** Individuals were once again transported to the VVTPC for further processing or, in the case of Plaintiff de la Cruz, directly to federal immigration officers.

Only after this entire process was completed could an individual be released, even into the custody of federal immigration officers.  ROA.47-49, ¶¶ 115, 119.  This process could take weeks and was subject to delay at each step.  *See* ROA.46, 48-49, 51-52, ¶¶ 107, 120, 137-38, 146.  Given this, the release process had the predictable consequence of causing individuals, including Plaintiff Ruiz de la Cruz, to be overdetained.  ROA.46-49, ¶¶ 105, 112, 113, 118, 122.

### B.     Val Verde County's Release Process.

Catch and jail detainees, including Plaintiffs Garces Robles, Soto Hernandez, and Soto Altamirano, were always in the legal custody of Sheriff Martinez.  Sheriff Martinez used a similar procedure to Sheriff Coe for releasing

individuals held under his authority.  ROA.44, ¶ 91.  This process, applicable to anyone who was ordered to be released, including, as in the Plaintiffs' cases, because their charges were dismissed, was as follows:

- **Step One:** When charges against a person held under Val Verde County authority were dropped, the presiding court sent an order to the VVTPC. ROA.44, ¶ 91.

- **Step Two:** Staff at VVTPC, including Appellant Taylor or Sheriff Martinez directly, sent release paperwork to either Briscoe Prison or Segovia Prison, wherever the person to be released was held.  ROA.44, ¶ 91.

- **Step Three:** The TDCJ warden of that prison, including the Appellant wardens, arranged for the paperwork to be physically signed by the person to be released.  ROA.44, ¶ 91.

- **Step Four:** A TDCJ employee physically delivered the signed release paperwork back to the VVTPC.  ROA.44, ¶ 91.

- **Step Five:** Staff at the VVTPC processed the (now-signed) release paperwork and then physically returned the paperwork to Sheriff Martinez.  ROA.44, ¶ 91.

- **Step Six:** After Sheriff Martinez received the signed release paperwork, he instructed the relevant prison to release the individual.  ROA.44, ¶ 91.

- **Step Seven:** Individuals, including Plaintiffs, were once again transported by prison guards to the VVTPC for further processing and then again to federal immigration officers.  ROA.44, ¶ 91.

Only after this entire process was completed could an individual be released. ROA.44, ¶ 91.  This process could take weeks and was subject to delay at each step.  ROA.44, 51-52, ¶¶ 91, 137-38, 146.  Given this, the release process had the predictable consequence of causing individuals, including Plaintiffs Garces Robles,

Soto Altamirano, and Soto Hernandez, to be overdetained for weeks after they became entitled to release. ROA.45, ¶ 93.

## IV. Each Appellant Contributed to Delays in Releasing Catch and Jail Detainees.

Each Appellant, including Sheriffs Coe and Martinez, Taylor, Wardens Ramirez, Coe, and Gonzalez, contributed to delays in processing release paperwork under the catch and jail program's circuitous release processes. ROA.51-52, ¶¶ 137-38, 146. Each Appellant implemented or failed to implement policies to ensure that release paperwork, when received, would be timely processed. ROA.51-52, ¶¶ 137-38, 146. This resulted in the entities these Appellants supervised processing release paperwork days to weeks after receiving it, notwithstanding potential delays in parts of the process administered by the other Appellants. ROA.51-52, ¶¶ 137-38, 146. The obvious consequence of these actions was to cause individuals, including all Plaintiffs, to be overdetained. ROA.51-52, ¶¶ 139-41, 148.

## V. Each Appellant Had Notice That Their Practices Were Regularly Causing People to Be Overdetained.

Each Appellant knew that the release process, including the policies and practices within their stages of that process, were systematically causing people arrested under the catch and jail program to be overdetained. ROA.37, ¶ 52.

*First*, the Appellants collectively overdetained at least 80 people between September 2021 and January 2022. ROA.37, ¶ 51. This overdetention was sufficiently widespread to be credibly reported. ROA.38, ¶ 58.

*Second*, the Appellants regularly received correspondence and complaints about ongoing overdetention. ROA.37-38, ¶¶ 53-56. For example, Taylor testified at a hearing in June 2022 that it was "not uncommon" to receive emails from defense attorneys explaining that their clients were entitled to release and overdetained. ROA.37, ¶ 53. He testified that he normally forwarded these requests to TDCJ employees at Briscoe and Segovia Prison. ROA.37, ¶ 53. He and Defendant Recana regularly forwarded similar correspondence and requests related to overdetention to the other Appellants. ROA.37-38, ¶¶ 54-56.

*Third*, Wardens Ramirez, Cirone, and Gonzalez regularly received complaints about overdetention from catch and jail detainees in their physical custody. ROA.38, ¶ 57. These complaints came verbally and through the inmate grievance system. ROA.38, ¶ 57.

*Fourth*, Warden Ramirez received dismissal documents from the Kinney County Attorney and correspondence from attorneys about ongoing overdetention, and she was ordered by a judge to release people to their attorneys without further delay or transportation. ROA.52, ¶ 143.

## VI. The Appellants Detained the Plaintiffs Well After They Were Entitled to Release.

### A. Soto Altamirano and Soto Hernandez

Plaintiffs Soto Altamirano and Soto Hernandez were arrested for alleged misdemeanor trespass in Val Verde County on August 30, 2021. ROA.40-41, ¶¶ 70, 75. Under Sheriff Martinez's authority and Warden Ramirez's custody, they were detained at Briscoe Prison when, on September 14, 2021, the county prosecutor sent Taylor a letter stating that the prosecutor's office declined to pursue charges against them. ROA.40-41, ¶¶ 70, 75. The letter stated that Plaintiffs Soto Altamirano and Soto Hernandez should be released "immediately." ROA.40-41, ¶¶ 70, 75. Nevertheless, Plaintiffs Soto Altamirano and Soto Hernandez were not released until October 26, 2021. ROA.40-41, ¶¶ 71, 76. They were overdetained for 42 days. ROA.39-40, ¶¶ 69, 74.

### B. Garces Robles

Plaintiff Garces Robles was arrested for alleged misdemeanor trespass in Val Verde County on September 30, 2021. ROA.38-39, ¶ 62. Under Sheriff Martinez's authority and Warden Cirone's custody, he had already been detained at Briscoe Prison for over 100 days when all charges against him were dropped on January 10, 2022. ROA.38-39, ¶ 62. An order directing his release was issued that day. ROA.38-39, ¶ 62. Nevertheless, he was not released until January 29, 2022. ROA.39, ¶ 64. He was thus overdetained for 19 days. ROA.38, ¶ 61.

### C.    Ruiz de la Cruz

Plaintiff Ruiz de la Cruz was arrested for alleged misdemeanor trespass in Kinney County on September 24, 2021.  ROA.42, ¶ 81.  Under Sheriff Coe's authority and Warden Gonzalez's supervision, he had already been detained at Segovia Prison for 110 days when, on January 12, 2022, he pled guilty in exchange for a sentence of 80 days served.  ROA.42, ¶¶ 81-82.  A release order directing Plaintiff Ruiz de la Cruz's release was issued that day.  ROA.42, ¶ 82.  Nevertheless, Plaintiff Ruiz de la Cruz was not released until January 25, 2024.  ROA.42-43, ¶ 83.  He was overdetained for 13 days.  ROA.42, ¶ 80.

## VII.   The Plaintiffs Filed Suit, and the District Court Denied the Defendants' Motions to Dismiss.

The Plaintiffs filed suit against the Appellants, Kinney and Val Verde Counties, and Recana on August 21, 2023.  ROA.22.  The Plaintiffs brought claims against each Defendant under 42 U.S.C. § 1983 for violating their constitutional rights and causing them to be overdetained.  ROA.23-24, 53, 54-56.  The Defendants all filed motions to dismiss.  ROA.155-71, 197-210, 283-92, 315-22, 477-88, 492-505.

The district court held an hour-long hearing and, on June 25, 2024, issued a 31-page opinion denying all motions to dismiss.  ROA.680-710.  The order described each Defendant's alleged role in the catch and jail program and causing the Plaintiffs' overdetention.  ROA.685-89.  It then analyzed whether the

complaint should be dismissed for failure to state a Section 1983 claim against the individual Defendants (*i.e.*, the Appellants). ROA.695-701. The district court addressed various pleadings-based arguments set forth by the Appellants, including that: (i) the Plaintiffs "fail to allege sufficient facts to show that Appellants affirmatively acted to cause Plaintiffs' overdetentions," (ii) the Plaintiffs "fail to allege sufficient facts to show that Defendants failed to adopt policies and that their failure to adopt [policies] caused Plaintiffs' overdetentions," and (iii) the "complaint negates itself by alleging that multiple [Appellants] are liable for the same overdetentions." ROA.695-701. The district court found that Plaintiffs "sufficiently plead that the [Appellants] violated Plaintiffs' constitutional rights . . . through direct or supervisory liability." ROA.703.

The district court then addressed the individual Appellants' immunity arguments. It found that Alvarado was not entitled to judicial immunity and no Appellant was entitled to qualified immunity. ROA.702-05. The court analyzed several Fifth Circuit cases addressing whether the right to timely release was clearly established and concluded that the Appellants' conduct was objectively unreasonable considering those decisions. ROA.703-05.

The Appellants subsequently filed this appeal. Kinney County, Val Verde County, and Recana did not appeal the district court's order. Over the Plaintiffs'

objections, all proceedings and discovery in the district court are stayed pending resolution of this collateral appeal.

## SUMMARY OF THE ARGUMENT

The district court correctly determined that the Plaintiffs state claims and that the Appellants are not entitled to absolute or qualified immunity for violating their constitutional right to timely release from custody. Each Plaintiff was detained between 13 and 42 days in Appellants' custody. The Appellants failed to ensure effective release in the catch and jail program, causing the Plaintiffs to be overdetained. The Plaintiffs' claims against them should be allowed to proceed.

1. Appellant Alvarado is not entitled to absolute immunity for his role in failing to stamp, file for the record, and transmit Plaintiff Ruiz de la Cruz's plea paperwork. The scope of absolute judicial immunity is narrow and does not extend to non-discretionary, routine duties such as stamping plea paperwork and filing it for the record. Alvarado's failure to comply with his state law duty to timely process Ruiz de la Cruz's plea paperwork falls outside the scope of judicial immunity.

2. None of the Appellants is entitled to qualified immunity. The district court correctly found that the Appellants violated the Plaintiffs' clearly established right to time release. The Appellants' delays in processing the Plaintiffs' release

paperwork and failure to ensure timely release in the catch and jail program violated the Plaintiffs' clearly established right to timely release.

The Plaintiffs sufficiently plead supervisory liability claims against each Appellant. The multi-step release processes required each Plaintiff's release paperwork to be channeled through each Appellant, sometimes multiple times. While holding the pen and the keys, each Appellant failed to adopt policies ensuring timely release, causing and contributing to the Plaintiffs' overdetentions. For their part, Sheriff Coe and Sheriff Martinez violated the Plaintiffs' constitutional rights by breaching their duty under state law as "keeper[s] of the county jail" to ensure that the Plaintiffs were timely released. Sheriff Coe oversaw indefinite detentions to effect immigration detainers separate from the criminal process, even when federal agencies had declined to participate.

The Plaintiffs sufficiently plead direct participation claims against Alvarado and Taylor. Alvarado knew from the face of Plaintiff Ruiz de la Cruz's plea paperwork that he was entitled to release, yet he failed to act for 14 days, causing Ruiz de la Cruz to be overdetained. Taylor was sent a letter stating that charges against Plaintiffs Soto Altamirano and Soto Hernandez were being dropped and that they were entitled to release. Taylor failed to act for 42 days. Alvarado and Taylor acted unreasonably and are liable for directly participating in violating the Plaintiff's constitutional rights.

3.　　The text of Section 1983 expressly abrogates the application of common law immunities to claims brought under that provision. These immunities, which courts created and have expanded to enable officials' unilateral rights to serial collateral appeals, should no longer be given.  Judges of this Court and several district courts have acknowledged the statutory text and its implications but declined to address this issue without intervention from the Supreme Court.  The Plaintiffs present this argument in the alternative and to preserve the issue for further review.

## ARGUMENT

## I.    Kinney County Clerk Alvarado Is Not Entitled to Judicial Immunity.

Appellant Alvarado is not entitled to absolute immunity for failing to timely file, stamp, and transmit Plaintiff Ruiz de la Cruz's plea paperwork. While "[c]ourt clerks 'have absolute immunity from actions for damages arising from acts they are specifically required to do under court order or at a judge's discretion,'" *Clay v. Allen*, 242 F.3d 679, 682 (5th Cir. 2001), this immunity is "narrow" and intended to protect clerks only where they act in a "nonroutine manner under command of court decrees or under explicit instructions of a judge." *Williams v. Wood*, 612 F.2d 982, 985 (5th Cir. 1980). This is because "in this limited group of functions, the clerk of court acts as the arm of the judge and comes within his absolute immunity." *Id*. Consequently, clerks are not protected by absolute immunity for "performing routine duties such as entering an order and notifying parties" of that order. *Id*. at 984.

Alvarado's alleged conduct is exactly the "routine" conduct not protected by absolute immunity. Alvarado finalized plea paperwork "by stamping it [and] filing it for the record," ROA.46, ¶ 101, and then "generat[ed] case disposition paperwork," which included "creating sentencing documents showing someone has pled no contest or guilty, was convicted, and was sentenced to credit for time served," ROA.49, ¶ 126. Alvarado then "transmitt[ed] that documentation to

relevant parties, including to the Kinney County Court, which in turn sen[t] the paperwork to Defendant Coe."  ROA.49-50, ¶ 126.

Alvarado's failure to timely stamp, process, and transmit plea paperwork in Plaintiff Ruiz de la Cruz's case was neither commanded by a court decree nor directed by a judge.  It breached his obligations under Texas law, which states that "[t]he county clerk *shall* record each act and proceeding of the county court, record under direction of the judge each judgment of the court, and record the issuance of and return on each execution issued by the court."  Tex. Loc. Gov't Code § 192.006(a) (emphasis added).  Texas law distinguishes "record[ing] [of] acts and proceedings of the county court" from "record[ing] under direction of the judge each *judgment* of the court."  *Id.* (emphasis added).  Processing plea paperwork is not a "judgment" or something that Alvarado is "specifically required to do under court order or at a judge's discretion," and thus is not protected by absolute immunity.  *Clay*, 242 F.3d at 682.

Alvarado argues that finalizing plea paperwork is "an integral part of the judicial process" and therefore "quasi-judicial."  Brief of Appellants Alvarado, Coe, and Martinez ("County Br.") at 14.  This incorrectly stretches this Court's "quasi-judicial immunity" cases, typically involving prosecutors' or witnesses' participation in judicial proceedings.  *See Quirk v. Mustang Eng'g, Inc., 143 F.3d 973, 975 (5th Cir. 1998)* (witnesses);  *Henzel v. Gerstein*, 608 F.2d 654, 657 (5th

Cir. 1979) (prosecutors). There may be circumstances when a clerk enjoys quasi-judicial immunity, like a Supreme Court clerk refusing to file a petition for rehearing a denial of *certiorari*, *e.g.*, *Evans v. Suter*, 260 F. App'x. 726, 727 (5th Cir. 2007), or a judicial clerk's determining whether a party's documents were appropriately submitted for filing and other procedural motions, *Vann v. Mazzant*, 2021 WL 6098779, at *3 (N.D. Tex. Nov. 24, 2021). This Court has never held that a Texas county clerk's filing, stamping, and transmission of judicially executed plea paperwork is entitled to quasi-judicial immunity.

Texas courts have long characterized a county clerk's duty to record proceedings as "ministerial," rather than judicial. *See, e.g., Brockenborough v. Melton, 55 Tex. 493, 500-01 (1881)* (contrasting "the mere mechanical duty of recording an instrument by the [county] clerk" with "the performance of an act judicial in its character"); *Turrentine v. Lasane*, 389 S.W. 2d 336, 337 (1965) (describing a county clerk's "duty to record" as "ministerial"), *First Nat. Bank of Portales, N.M. v. McElroy*, 51 Tex. Civ. App. 284, 290 (1908) ("The duties of a recording officer" such as a county clerk "are ministerial" rather than "judicial"). Because Alvarado's duty to stamp, file, and transmit plea paperwork is routine and required by law, and his failure to timely do as alleged was not required by a court order or at a judge's discretion, he cannot successfully claim absolute immunity.

Alvarado's alleged conduct here involves no discretion, as recording plea paperwork happens after, not during, the judicial process. Alvarado has no discretion not to file the documents. The failure to perform this duty is not given absolute immunity. *See Williams, 612 F.2d at 985* ("In entering an order and notifying the parties a clerk of court enjoys qualified but not absolute immunity."); *Rheuark v. Shaw*, 547 F.2d 1257, 1259 (5th Cir. 1977) (Texas county clerk liable under § 1983 for "unreasonably delaying the preparation and transmittal of his state trial court records"); *Foley v. Hughes*, 116 F. App'x. 519, 520 (5th Cir. 2004) (notifying a litigant "to file a motion for authorization to file a successive" habeas petition is a "routine" duty not protected by absolute immunity).

## II.   No Appellant Is Entitled to Qualified Immunity.

The scope of this appeal is "whether [their] alleged conduct has violated a federal right . . . and whether the right in question was clearly established at the time of the alleged violation, such that the officer was on notice of the unlawfulness of his or her conduct." *Crittindon v. LeBlanc*, 37 F.4th 177, 185-86 (5th Cir. 2022); *Parker v. LeBlanc*, 73 F.4th 400, 404 (5th Cir. 2023) (on appeal from a motion to dismiss asserting immunity, this Court determines "whether a certain course of conduct would, as a matter of law, be objectively unreasonable in light of clearly established law." The Appellants cannot dispute the Plaintiffs'

clearly established rights were violated; the Plaintiffs have sufficiently alleged that the Appellants are responsible.

## A. The Right to Timely Release Is Clearly Established.

The appellants' delays in processing the Plaintiffs' release paperwork violated their clearly established constitutional right to timely release. The "touchstone" for determining whether a right is clearly established is "fair warning." *Hicks*, 81 F.4th at 504. "The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" *Id.* The "relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his [or her] conduct was unlawful in the situation he [or she] confronted." *Id.* (alterations in original).

When the Plaintiffs were overdetained, the right to timely release from custody was established beyond debate. "Clear as day, the government cannot hold an inmate without the legal authority to do so, for that would 'deprive' a person of his 'liberty . . . without due process of law.'" *Hicks*, 81 F.4th at 504 (alteration in original). This Court has "long-held and repeatedly reaffirmed" the principle that individuals "have the right to timely release from prison [or jail] consistent with the terms of their sentences." *Id.*; *Crittindon*, 74 F.4th at 188

("This Court has recognized the 'clearly established right to timely release from prison."); *see also Parker, 73 F.4th at 407* (agreeing that "[t]he law is clear that a jailer . . . has a duty to ensure that inmates are timely released from prison."); *see also Whirl v. Kern, 407 F.2d 781, 792 (5th Cir. 1969)* ("There is no privilege in a jailer to keep a prisoner in jail beyond the period of his lawful sentence.").

Texas law has recognized this principle for nearly a century.  In *McBeath v. Campbell*, 12 S.W.2d 118 (Tex. Comm'n App. 1929), the Commission of Appeals of Texas confirmed that a jailer has a "duty to know by what authority [a person in his custody] is confined therein, and he cannot close his eyes and fail to make investigation and excuse himself on the ground of lack of knowledge" when that person is being held without legal authority.  *Id.* at 123; *see also Box v. Fluitt, 47 S.W.2d 1107, 1108 (Tex. Civ. App. 1932)* ("The law is equally well settled that . . . where the peace officer in charge of the jail learns that a party is incarcerated therein without any warrant and he refuses to discharge him, [this] constitutes as a matter of law a false imprisonment.").

Each Appellant had "fair warning" that their failure to process release paperwork on time would violate the constitutional right to timely release.  They "had 'fair warning' that their failure to address this [regular] delay would deny prisoners like the Plaintiffs their immediate or near immediate release" upon their entitlement to it.  *Crittindon*, 37 F.4th at 188; *Parker*, 73 F.4th at 408 (same). It

24

was clearly established that "a jailer . . . has a duty to ensure that inmates are timely released from prison." *McNeal v. LeBlanc*, 90 F.4th 425, 431 (5th Cir. 2024) (cleaned up).

**B. The District Court Correctly Held That the Plaintiffs Sufficiently Alleged Supervisory Liability Claims.**

Officers are subject to supervisory liability under Section 1983for adopting or failing to adopt policies if doing so (i) "causally results in a constitutional injury" and (ii) the officers acted with "deliberate indifference," or a "disregard [for] a known or obvious consequence of [their] actions." *Crittindon*, 37 F.4th at 186 (alterations in original).

Plaintiffs asserting supervisory liability claims can demonstrate causation by alleging that a supervisory official breached a duty imposed by state law and that such breach resulted in the plaintiffs' injury. *Sims v. Adams*, 537 F.2d 829, 831 (5th Cir. 1976); *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981). Plaintiffs can satisfy the deliberate indifference element by alleging a "pattern of similar constitutional violations," "permitting the inference that Defendants deliberately chose policies causing violations of constitutional rights." *Crittindon*, 37 F.4th at 186.

The Complaint alleges three theories of supervisory liability. First, the Plaintiffs allege that each Appellant failed to adopt policies that would ensure release paperwork would be processed promptly even after overdetention was

rampant.  Second, Sheriff Coe and Sheriff Martinez breached specific state-law

duties to prevent overdetention and address delays they helped to create by

implementing unnecessarily lengthy and prolonged release processes.  Third,

Sheriff Coe implemented an additional indefinite, detainer-or-not detention policy,

further delaying individuals' release.  Each of these bases is sufficient to overcome

the Appellants' immunity claims.

### 1. Each Appellant Failed to Adopt Policies Ensuring Release Paperwork Was Processed on Time.

#### a. The Appellants Violated the Plaintiffs' Constitutional Rights and Are Subject to Supervisory Liability.

Each Appellant caused or contributed to the Plaintiffs' overdetention and

acted with deliberate indifference by failing to adopt policies that would have

ensured the Plaintiffs' timely release.  They are therefore subject to supervisory

liability for violating the Plaintiffs' constitutional right not to be overdetained.

Each Appellant was responsible for designing and implementing policies

governing one segment of the lengthy release processes applicable to catch and jail

detainees.[2]  Each Appellant failed to adopt policies that would have ensured that

---

[2] The Complaint maps which Plaintiff makes claims against each Appellant.
Alvarado supervised the Kinney County Clerk's office, Sheriff Coe supervised the
Kinney County Sheriff's Office, and Warden Gonzalez supervised Segovia Prison
when Plaintiff Ruiz de la Cruz was overdetained; Sheriff Martinez supervised the
Val Verde County Sheriff's Office, Taylor supervised the Val Verde Temporary
Processing Center, and Warden Ramirez supervised Briscoe Prison when Plaintiffs
Soto Altamirano and Soto Hernandez were overdetained; and Sheriff Martinez
supervised the Val Verde County Sheriff's Office, Taylor supervised the Val
(continued…)

their subordinates processed release paperwork in a timely manner after it was received.  As a result of this failure, each Appellant (or their subordinates) took days to weeks to process release paperwork each time they received it.  ROA.51-52, ¶¶ 137-38, 146.  Each step of the process for release from the catch and jail program needed to be completed before the next could start, and the whole dance needed to be completed before a person could be released, ROA.44, 47, 49, ¶¶ 91, 115, 119.  Although the Appellants had the power to correct this process, their failure in the face of systematic delay caused and contributed to the Plaintiffs' overdetentions, violating the Constitution.

The Plaintiffs described these failures and missteps in the Complaint, and the district court correctly held that these allegations sufficiently alleged that the Appellants caused the Plaintiffs' overdetention.  For example, under Sheriff Martinez's release procedure, applicable to three Plaintiffs, release paperwork needed to go from the county to the VVTPC (supervised by Taylor), then to Briscoe Prison (supervised by Warden Ramirez or Cirone), then back to the VVTPC, then to Sheriff Martinez.  ROA.44, ¶ 91.  Paperwork delayed at each stop for days to weeks prevented a person's release, violating their constitutional right not to be imprisoned "without due process of law."  *Parker*, 73 F.4th at 404.  Each

---

Verde Temporary Processing Center, and Warden Cirone supervised Briscoe Prison when Plaintiff Garces Robles was overdetained.  ROA.25-30, ¶¶ 9-13, 15-16, 18-21.

Appellant is liable for contributing to the Plaintiffs' injuries, whether days or weeks. *See Hicks, 81 F.4th at 506* (officer subject to supervisory liability for failing to train subordinate and causing plaintiff to be overdetained for five additional days).

The district court also correctly determined that the Plaintiffs sufficiently pleaded each Appellant's deliberate indifference to a "pattern of overdetentions" caused by them. The Appellants overdetained 80 people held under the catch and jail program between September 2021 and January 2022. ROA.699. They knew individuals were regularly being overdetained because they were told of it. Taylor and Recana regularly forwarded correspondence about overdetentions to Sheriff Coe, Alvarado, Sheriff Martinez, and Warden Ramirez, Cirone, and Gonzalez, ROA.37-38, ¶¶ 53-55; Warden Ramirez, Cirone, and Gonzalez regularly received complaints about overdetentions through the inmate grievance system, ROA.38, ¶ 57; and Warden Ramirez specifically received documentation from the Kinney County Attorney dismissing cases against individuals, correspondence from attorneys indicating that individuals were being overdetained, and even an order from a judge directing her to release individuals without further delay, ROA.52, ¶ 143. Indeed, when the Plaintiffs were overdetained, overdetention was sufficiently widespread to be widely reported. ROA.38, ¶ 58 & n.15. Even if that were not so, as the district court noted, the circuitous nature of the Kinney County

and Val Verde County release processes, wherein paperwork passed through numerous hands, "inherently suggest[] that each [Appellant] knew" individuals subject to those processes were overdetained. ROA.699.

This alleged conduct establishes a "pattern of similar constitutional violations," such that the Appellants' "inaction amounted to a disregard of an obvious risk" of constitutional harm to the Plaintiffs. *Crittindon*, 37 F.4th at 187 (knowledge of a study regarding general rates of overdetention in Louisiana's prison system followed by inaction constituted deliberate indifference). Taylor does not challenge this theory of supervisory liability as alleged against him.[3] Warden Ramirez, Cirone, and Gonzalez's only response is that "*Crittindon* is drastically different than the facts alleged here." Brief of Appellants Cirone, Gonzalez, Ramirez, and Taylor ("State Br.") at 38-39. Yet like in *Crittindon*, the Appellants were responsible for ensuring that release paperwork for persons in their custody was timely processed. *Crittindon*, 37 F.4th at 187. That the defendants in *Crittindon* were "high-ranking" officials in the Louisiana Department of Public Safety and Corrections (as opposed to high-ranking officials at Briscoe and Segovia Prison) makes no difference; the Appellants had authority and responsibility to adopt policies ensuring the timely processing of release

---

[3] "By presenting but failing to brief" this argument, Taylor "has abandoned the issue whether the district court erred in denying" qualified immunity on this ground. *Ramirez v. Escajeda*, 921 F.3d 497, 500 (5th Cir. 2019).

paperwork, and their failure to adopt such policies violated the Plaintiffs' constitutional rights.

Moreover, Warden Ramirez, Cirone, and Gonzalez ignore *Parker*, which found that the defendants' knowledge of (i) a 2017 legislative audit report regarding prison release processes in Louisiana, (ii) a single editorial article published in a newspaper, and (iii) testimony by state employees admitting to widespread overdetention in a civil lawsuit established a pattern of similar constitutional violations. *Parker*, 73 F.4th at 405; *see also McNeal, 90 F.4th at 432* (plaintiffs adequately alleged deliberate indifference where defendants knew of legislative audit report and testimony from state employees regarding widespread overdetention, and defendants were contacted by "multiple public officials . . . regarding overdetained prisoners"). The Plaintiffs allege more than what was deemed adequate in *Parker* and *Crittindon,* and the Appellants fail to point to any authority suggesting otherwise.

In sum, the Appellants' failure to adopt policies ensuring the timely processing of release paperwork was objectively unreasonable. It was clearly established at the time of the Plaintiffs' overdetentions that the Appellants' failure to adopt policies to correct days to weeks of known delay in processing release paperwork would necessarily cause individuals to remain in jail despite no legal authority to continue holding them. *See Crittindon, 37 F.4th at 188* (supervisory

officials liable for failing to adopt policies to prevent regular and known overdetention); *Parker*, 73 F.4th at 408 ("In *Crittindon*, we held that the defendants had 'fair warning that their failure to address [] delay would deny prisoners like Plaintiffs their immediate or near-immediate release upon conviction' because the defendants knew of the delays in prisoners' timely releases."). Their appeals thus should be denied.

### b. The Appellants Do Not Meaningfully Respond to the Plaintiffs' Arguments.

The Appellants do not dispute that the Plaintiffs' rights were violated if their allegations are true. Instead, they dispute the accuracy and characterization of the Plaintiffs' facts. The Appellants raise four primary arguments: (1) the Complaint does not allege Alvarado's, Sheriff Coe's, or Sheriff Martinez's personal knowledge of the Plaintiffs' Overdetention, County Br. 15-17, 20-28; (2) the Complaint does not allege facts establishing that Warden Ramirez, Gonzalez, or Cirone are liable for the Plaintiffs' Overdetention, State Br. at 28-29, 31-32, 33-35; (3) Sheriff Coe and Warden Gonzalez cannot be liable for Plaintiff Ruiz de la Cruz's 13-day overdetention because Alvarado's alleged 14-day plea paperwork processing delay is the sole cause of the Overdetention, State Br. at 30-31; County Br. at 18-21; and (4) the district court failed "to separately address each individual's qualified immunity claim," State Br. at 36-40. None of these arguments has any merit.

As to the first argument by Alvarado, Sheriff Coe, and Sheriff Martinez, personal knowledge is not required for a supervisory liability claim. *See Brown v. Alabama Dep't of Corrs., 2019 WL 4780801, at \*2 (M.D. Ala. Sept. 30, 2019) ("[T]he official's personal knowledge of—or for that matter participation in—the underlying constitutional violation is not required for § 1983 supervisory liability to attach.")*. The Appellants can be liable for causing the Plaintiffs to be overdetained even if they did not know that *these* Plaintiffs were being held unlawfully. Following this Court's cases, it is enough that the Appellants knew that people *similarly situated to these Plaintiffs* were being overdetained. *See Parker, 73 F.4th at 405* (supervisory liability is appropriate where "*either* the supervisor personally was involved in the constitutional violation *or* . . . there is a sufficient causal nexus between the supervisor's conduct and the constitutional violation" (emphasis added)). Here, Plaintiffs are similarly situated to the dozens or hundreds of others in the catch and jail program overdetained in Briscoe and Segovia Prisons.

The second argument fails because the Complaint does allege, and the district court correctly described, the wardens' unique and overlapping roles in effecting release from the catch and jail program. *See Part III-IV, supra*. Despite actual and constructive knowledge of systematic failures in their catch and jail system, ROA.52, ¶ 142, the Appellants failed to take remedial actions that would

have saved the Plaintiffs from continued detention after they should have been released. Once Warden Ramirez, Cirone, and Gonzalez became aware of this issue, they could not "close [their] eyes" and fail to take any action to remedy the overdetentions. *McBeath*, 12 S.W.2d at 123; *Crittindon*, 37 F.4th at 188 (the defendants' knowledge of delay in releasing individuals in their custody gave them "'fair warning' that their failure to address this delay would deny prisoners like Plaintiffs their immediate or near-immediate release upon conviction"). But, the Complaint alleges they did nothing. These allegations are sufficient to overcome claims to immunity at this stage. *See Parker, 73 F.4th at 406* (affirming denial of motion to dismiss and noting that "[w]hat [the defendant] may have done to comply with his supervisory obligations is not yet part of the record," and the plaintiff "has not had the opportunity to conduct discovery").

The Appellants' third argument—suggestively pointing fingers at one another —is wrong because Rule 8(d) "allows for alternative pleading," regardless of whether an allegation is "inconsistent with [a party's] alternative allegation[s]." *Cherry Knoll, LLC v. Jones*, 922 F.3d 309, 317 n.14 (5th Cir. 2019); *see also Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 674 (5th Cir. 2003) ("Plaintiffs are permitted to plead in the alternative."). The Plaintiffs can plead that Alvarado's 14-day delay caused Plaintiff Ruiz de la Cruz's 13-day overdetention and *simultaneously* plead that other Appellants and Defendants

alternatively caused his overdetention.[4] *See, e.g.*, *Ex rel. Hueseman v. Prof. Compounding Ctrs. of Am., Inc.*, 664 F. Supp. 3d 722, 753 (W.D. Tex. 2023) (rejecting the argument that the government's "common law claims must fail because the Complaint does not explicitly plead these claims in the alternative" as "meritless").

Moreover, the Plaintiffs' allegations are consistent. The Plaintiffs clearly define the catch and jail program as a system with distinct components coordinating towards a shared goal. It is established that defendants can be held jointly liable for causing constitutional harm. Shifting blame is no defense to violating clear constitutional and state law obligations to ensure that individuals held in custody are released in a timely manner. *See James v. Sadler, 909 F.2d 834 (5th Cir. 1990) (participants who are "integral to" alleged constitutional violations may be liable under Section 1983); McBeath, 12 S.W.2d at 123* (jailer

---

[4] The allegation that Alvarado's delay lasted for 14 days may, for example, turn out to be partially but not fully born out by the evidence at trial. Or the violations of Sheriff Coe and/or Warden Gonzalez may in fact have contributed to Alvarado's delay. A plaintiff alleging an injury (*e.g.*, a single bullet wound) may initially plead claims against all apparent tortfeasors (*e.g.*, the several people who fired weapons) and need not, prior to any discovery, surrender claims against all the others by alleging that any one of them caused the injury. *See, e.g., Joe Hand Promotions, Inc. v. Lynch*, 822 F. Supp. 2d 803, 805 (N.D. Ill. 2011) (construing complaint as pleading two claims in the alternative where claims were brought under two statutes, either of which would provide the exclusive remedy, if applicable).

who overdetains individual in custody is "a joint tort-feasor with those wrongfully arresting and placing him in said jail").[5]

The fourth and final argument mischaracterizes the district court's careful analysis. The district court specifically discussed each Appellant and did not "devote[] only one sentence to Gonzalez, Ramirez, and Cirone's qualified immunity." State Br. at 36. Rather, the district court spent several pages detailing each Appellant's specific role in the Plaintiffs' overdetention and analyzing their immunity defenses. ROA.685-89, 703-05. The Appellants do not identify any specific error in the district court's analysis.

> ### 2. Sheriffs Coe and Martinez Violated Their Duties to Ensure the Plaintiffs' Timely Release.

Under the Plaintiffs' second theory of supervisory liability, Sheriff Coe and Sheriff Martinez breached their duties to ensure the Plaintiffs' timely release under Texas law. Under Texas law, "the sheriff of each county is the keeper of the county jail," and the sheriff is charged with "safely keep[ing] all prisoners committed to the jail by a lawful authority, subject to an order of the proper court." Tex. Loc. Gov't Code § 351.041(a). Though the "sheriff may appoint a jailer to

---

[5] This argument that the Complaint's allegations are inconsistent further constitutes an impermissible "attack on the district court's denial of [their] motion to dismiss for failure to state a claim" and should be disregarded as beyond this Court's jurisdiction in this appeal. *Ramirez*, 921 F.3d at 501.

operate the jail and meet the needs of the prisoners," the sheriff "shall continue to exercise supervision and control over the jail" and has "an unyielding duty to know his prisoner's sentence time."  Tex. Loc. Gov't Code § 351.041(b); *see also Whirl, 407 F.2d at 794, 795* ("Conjoined with the statutory duty of a sheriff to protect his prisoners is the statutory duty to make investigation of the authority upon which they are held.").

Sheriff Coe and Sheriff Martinez breached this duty and caused the Plaintiffs' overdetention.  According to their release processes, before catch and jail detainees could be released, paperwork needed to be transmitted (often physically) between and then processed by six or seven facilities or entities, potentially hundreds of miles apart, before a person could be released.  ROA.44, 47-49, ¶¶ 91, 115, 119.  These procedures were subject to delay at each step and necessarily caused individuals, including Plaintiffs, to be detained for weeks after they had become entitled to release.  ROA.44, 46, 48-49, 51-52, ¶¶ 107, 120, 137-38, 146.  Sheriff Coe and Sheriff Martinez acted deliberately indifferently to the Plaintiffs' rights because they knew about widespread overdetention and persisted without a solution.  *See*, Part II.B.1.a *supra*.

This conduct was objectively unreasonable.  In *Crittindon*, this Court held that Louisiana state prison officials violated inmate-plaintiffs' clearly established constitutional rights where they "knew that local jails were failing to timely send

paperwork but did nothing." 37 F.4th at 186. Similarly, Sheriff Coe and Sheriff Martinez created a release system that they knew was unlawfully delaying release and did nothing to fix it. Their "inaction amount[s] to a disregard of an obvious risk" of overdetention, and constitutes a violation of the Plaintiffs' clearly established rights. *Id.* at 187; *see McNeal*, 90 F.4th at 433 (state defendant "had 'fair warning that his failure to address' overdetention in prisons 'would deny prisoners . . . their immediate or near-immediate release upon conviction." (ellipsis in original)); *see also* Part II.A, *supra*.

Sheriff Coe and Sheriff Martinez respond that they are "statutorily prohibited by state law from releasing any prisoner except by lawful order of the proper Court" and that "a sheriff does not commit a tort by not immediately releasing a prisoner." County Br. at 19-20, 25-26. That overlooks the Plaintiffs' allegations that the courts *issued* such lawful orders and the Plaintiffs were indisputably *entitled* to release. The law requires sheriffs to "safely keep all prisoners committed to the jail *by a lawful authority*, subject to an order of the proper court." Tex. Loc. Gov't Code § 351.041(a) (emphasis added). "[W]hen the sheriff finds out that a prisoner is confined in his jail, which the law makes him the keeper of, and holds him responsible for, it is his duty to know by what authority [the person] is confined therein, and he cannot close his eyes and fail to make investigation and excuse himself on the ground of lack of knowledge." *McBeath*,

12 S.W.2d at 123.  The Plaintiffs were in Sheriff Coe's and Sheriff Martinez's legal custody and were entitled to release under state law because charges against them were dropped or they had completed their sentences.  ROA.38-42, ¶¶ 62, 70, 75, 82.  Sheriff Coe and Sheriff Martinez's failure to release the Plaintiffs after they became entitled to release thus breached the very law they cite in their attempt to justify their inaction.

The latter argument, that Sheriff Coe and Sheriff Martinez should be permitted some delay in releasing individuals, fails to explain how delays of 13 to 42 days could be reasonable in the Plaintiffs' cases.[6]  This Court has repeatedly "held that 'it is without question that holding without legal notice a prisoner for a month beyond the expiration of his sentence constitutes a denial of due process,'" *McNeal*, 90 F.4th at 431, making the 42-day overdetentions of Plaintiffs Soto Altamirano and Soto Hernandez *per se* unconstitutional.  This Court also has found that contributing even five unlawful days to a person's detention can be unconstitutional.  *See, e.g.*, *Hicks*, 81 F.4th at 506 (supervisor liable for failing to train subordinate who deliberately overdetained plaintiff for five additional days).

---

[6] To the extent Sheriff Coe and Martinez contend the amount of delay should be calculated based on when they personally knew of Plaintiffs' overdetention, that is not the correct measure of time.  The trigger date is when Plaintiffs became entitled to release, not the day that Sheriff Coe or Sheriff Martinez learned of their particular overdetentions. *Cf. Crittindon, 37 F.4th at 188* (plaintiffs adequately stated supervisory liability claims where defendants never knew of plaintiff's specific right to release).  Indeed, as explained above, it is not required that any Appellant know the identity of any Plaintiff. *See supra* at 32.

Courts around the country have found overdetentions of far less than five days to be unconstitutional. *See, e.g.*, *Morales v. Chadbourne*, 793 F.3d 208, 211, 217-18 (1st Cir. 2015) (24 hours); *Berry v. Baca*, 379 F.3d 764, 769 (9th Cir. 2004) (29 hours); *Brass v. County of Los Angeles*, 328 F.3d 1192, 1194 (9th Cir. 2003) (39 hours); *see also Davis v. Hall*, 375 F.3d 703, 713 (8th Cir. 2004) ("[I]n Young, we held that even a *thirty-minute detention* after being ordered released could work a violation of a prisoner's constitutional rights under the Fourteenth Amendment." (emphasis added)). To the extent the sheriffs argue the Plaintiffs' overdetention was reasonable (they do not), the Plaintiffs dispute the assertion and it is not properly considered on a 12(b)(6) motion.

### 3. Sheriff Coe Implemented an Illegal Indefinite Detention Policy.

The Plaintiffs allege a third theory of liability against Sheriff Coe for violating Plaintiff Ruiz de la Cruz's clearly established constitutional rights by holding individuals like Ruiz de la Cruz until ICE issued paperwork declining to issue a detainer or agreed to take them into custody. Intentionally overdetaining individuals through a policy of indefinite detention is unconstitutional. *Jauch v. Choctaw County*, 874 F.3d 425, 432 (5th Cir. 2017) (a county sheriff's explicit policy of "indefinite pre-trial detention" supported a supervisory liability claim). This is true even if ICE has issued a detainer because detainers expire after 48 hours and cannot justify indefinite detention. 8 C.F.R. § 287.7 ("Upon a

determination by the Department to issue a detainer . . . such agency shall maintain custody of the alien for a period not to exceed 48 hours, excluding Saturdays, Sundays, and holidays.").  Sheriff Coe's adoption of this indefinite detention policy violated Plaintiff Ruiz de la Cruz's clearly established constitutional rights. *See Jauch*, 874 F.3d at 432; *see* Part II.A, *supra*.  Sheriff Coe does not even respond to this theory, let alone assert why he should be shielded from it by qualified immunity.

### C. Alvarado and Taylor Are Directly Liable for the Plaintiffs' Overdetention.

#### 1. Alvarado Violated Plaintiff Ruiz de la Cruz's Constitutional Rights Because Alvarado Knew That Ruiz de la Cruz Was Entitled to Release and Yet Waited 14 Days to Stamp and File His Plea Paperwork.

The Complaint alleges that Alvarado directly violated Plaintiff Ruiz de la Cruz's clearly established constitutional right to timely release.  Specifically, the Plaintiffs allege that "[i]n Mr. Ruiz de la Cruz's case, Defendant Alvarado stamped the time served plea paperwork and filed it for the record 14 days after the plea was entered," despite a court order directing Ruiz de la Cruz's release.  ROA.42, ¶ 82, ROA.46, ¶ 107.  By delaying the finalization of Ruiz de la Cruz's plea paperwork despite knowing from the face that he was entitled to release, Alvarado caused Ruiz de la Cruz's overdetention with deliberate indifference and is directly liable for Ruiz de la Cruz's overdetention.  *See Crittindon*, 37 F.4th at 189

(denying qualified immunity to two officers who had direct knowledge of the plaintiffs' overdetention yet failed to take any steps to correct it); *see also Hicks*, 81 F.4th at 505 (defendant violated plaintiff's clearly established constitutional rights where she "reviewed all of [the plaintiff's release paperwork], knew he was not being credited for [time as required under state law], yet did not take any action to correct the error").

Alvarado challenges only the Plaintiffs' factual pleadings, arguing that the Complaint "does not contain sufficient factual allegations to demonstrate that County Clerk Alvarado, through his own actions, violated Plaintiff Ruiz de la Cruz's constitutional rights." County Br. at 14-15. Alvarado disputes "when [he] allegedly received the paperwork from the presiding court or whether he received any such paperwork at all," and whether he "received and then delayed stamping or filing Plaintiff Ruiz de la Cruz's paperwork." *Id.* at 15-16. Alvarado does not offer any other refutations of his direct liability.

This is not a proper issue for the Court's determination. *See Ramirez, 921 F.3d at 499* (the Court lacks jurisdiction to "review the simple denial of a motion to dismiss for failure to state a claim"). In any event, Plaintiff Ruiz de la Cruz adequately pleads that Alvarado caused his overdetention. As explained above, Alvarado received Ruiz de la Cruz's paperwork and failed to stamp it for 14 days, causing him to be overdetained in violation of his constitutional rights. ROA.46,

41

¶¶ 105-07.  The Plaintiffs sufficiently plead that Alvarado directly caused the Plaintiff Ruiz de la Cruz's overdetention, and thus that Alvarado violated Ruiz de la Cruz's constitutional right to be timely released from custody.

### 2. Taylor Violated Plaintiffs Soto Hernandez and Soto Altamirano's Clearly Established Rights Because He Knew They Were Entitled to Release but Did Nothing for 42 Days.

The Complaint plausibly alleges that Taylor directly violated Plaintiffs Soto Altamirano's and Soto Hernandez's clearly established constitutional rights. Plaintiffs allege that Taylor was directly liable for Plaintiffs Soto Altamirano and Soto Hernandez's overdetention because the Val Verde County Attorney sent Taylor a letter on September 14, 2021, stating that Plaintiffs Soto Altamirano and Soto Hernandez were entitled to release, and then *for 42 days* Taylor did nothing to secure their release.  ROA.40, ¶ 70, ROA.41, ¶¶ 75-77.  This is enough to establish that Taylor violated Plaintiffs Soto Altamirano and Soto Hernandez's clearly established rights.  *See Hicks*, 81 F.4th at 505; *Crittindon*, 37 F.4th at 190 (defendants liable for direct participation in constitutional violation where they knew that the plaintiffs "had been illegally held for three months" yet "failed to address this risk" for 17 days).

Taylor argues that, while he is alleged to have been *sent* the letter stating Plaintiffs Soto Altamirano and Soto Hernandez were entitled to release, he may not have *received* the letter.  He adds that he took "prompt" action once he was

contacted by Plaintiffs Soto Altamirano and Soto Hernandez's attorney on October 26, 2021, State Br. at 19, 23, and that the Plaintiffs insufficiently detail his causal role. *Id.* at 26-27. Taylor is wrong.

First, Taylor flips the applicable legal standard on its head. The Court must accept all allegations in the Complaint as true and view those allegations "in the light most favorable to the *plaintiffs*." *Parker*, 73 F.4th at 404 (emphasis added). It is reasonable to infer that Taylor received and reviewed the letter sent to him, and Taylor points to no facts in the Complaint suggesting otherwise. That Taylor normally forwarded correspondence about overdetention to other actors in the catch and jail program cannot establish that he did not review the letter. Nor does any action taken by Taylor in response to the October 26, 2021, contact from Plaintiffs Soto Altamirano and Soto Hernandez's attorney excuse or remedy Taylor's earlier failure to act for 42 days in response to the September 14, 2021, letter stating that Soto Altamirano and Soto Hernandez were entitled to release.[7]

Second, the Plaintiffs' pleadings against Taylor sufficiently state a plausible claim and overcome qualified immunity. Like in *Crittindon*, Taylor received notice that Plaintiffs Soto Altamirano and Soto Hernandez were entitled to release

---

[7] This argument is another example of an attack on the district court's denial of the Appellants motion to dismiss for failure to state a claim, which the district court properly denied and which falls outside the scope of this Court's review in this appeal. *Ramirez*, 921 F.3d at 501.

but did nothing.  The Plaintiffs allege Taylor's direct involvement in their overdetention in a way that allows "the reasonable inference that the defendant is liable for the misconduct alleged," which is enough at this stage. *Parker*, 73 F.4th at 406 (cleaned up); *see also Iqbal v. Ashcroft*, 556 U.S. 662, 678 (2009) ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations'" like the factual detail obtained after a full period of discovery).

## III.   The Plain Text of Section 1983 Does Not Support Qualified Immunity.

The original text and proper interpretation of Section 1983 separately forecloses the Appellants' qualified immunity defenses.  In *Pierson v. Ray*, the foundation of the entire qualified immunity doctrine, the Supreme Court interpreted Section 1983 as preserving common-law immunities and defenses on the assumption that "Congress would have specifically so provided had it wished to abolish the[se] doctrine[s]."  386 U.S. 547, 554-55 (1967).

This "non-derogation canon" has been upheld by the Supreme Court in the context of Section 1983 on the basis that the statute "made no mention of defenses or immunities."  *Ziglar v. Abbasi*, 582 U.S. 120, 157 (2017) (Thomas, J., concurring); *see also Imbler v. Pachtman*, 424 U.S. 409, 418 (1976).  But application of the non-derogation canon to superimpose common law defenses undermines Section 1983's text, structure, and purpose, and has never been warranted.

A recent look at the historical record reveals the fatal fault in the foundation of judicially crafted immunity for alleged violations of constitutional rights: the original text of Section 1983 did in fact abrogate all common law immunities and defenses, including the absolute and qualified immunity claimed by the individual Defendants here. *See* Alexander A. Reinert, *Qualified Immunity's Flawed Foundation*, 111 Cal. L. Rev. 201, 218-28 (2023).

As enacted in 1871, Section 1983 states in relevant part:

> That any person who, under color of any law . . . shall subject, or cause to subjected, any person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution of the United States, shall, *any such law, statute, ordinance, regulation, custom, or usage of the State to the contrary notwithstanding,* be liable . . . ."

Civil Rights Act of 1871, ch. 22, § 1, 17 Stat. 13 (1871) (emphasis added).

For reasons unknown, the original text of Section 1983, including the highlighted clause above, was never compiled into the first version of the United States Code. *See* Reinert, *supra*, at 234-35. This actual text that Congress enacted, which has never been directly analyzed by the Supreme Court, explicitly disclaims the foundational premise of existing immunity jurisprudence. As Judge Willett has recognized, the non-derogation canon applied to qualified immunity "does not merely *complement* the text [of Section 1983]—it brazenly *contradicts* it." *Rogers v. Jarrett*, 63 F.4th 971, 980, 981 (5th Cir. 2023) (Willett, J., concurring) (emphasis in original); *see also Price v. Montgomery County*, 72 F.4th 711, 726

n.1 (6th Cir. 2023) (Nalbandian, J., concurring) ("Emerging scholarship suggests that the express abrogation of common-law immunities only dropped out of the statute when '[f]or reasons lost to history, [the language] was inexplicably omitted from the first compilation of federal law.'" (alterations in original)).

One of the bedrock principles of American legal jurisprudence is that courts must enforce the text of the law as it is written. *Bostock v. Clayton County*, 590 U.S. 644, 654 (2020). The Supreme Court has made clear that the original text of a statute, as enacted by Congress, continues to carry the force of law until repealed through legislation. *See U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 448 (1993) ("Though the appearance of a provision in the current edition of the United States Code is 'prima facie' evidence that the provision has the force of law . . . it is the Statutes at Large that provides the 'legal evidence of laws.'" (internal citations omitted)). And in imposing liability regardless of any contrary "custom" or "usage of the State," the plain text of the statute expressly rejects the immunity that Appellants claim. Civil Rights Act of 1871, ch. 22, § 1, 17 Stat. 13. This interpretation is consistent with contemporary usage, *see Wheaton v. Peters, 33 U.S. 591, 659 (1834)* (the "usages and customs" of a state determine the scope of the "common law"), as well as the relevant legislative history, *see* Reinert, *supra*, at 239 n.248 & 249.

While this Court has discretion to construe a statute that the Supreme Court has not analyzed, this Court has stated that only the Supreme Court "can definitively grapple with § 1983's enacted text and decide whether it means what it says—and what, if anything, that means for § 1983 immunity jurisprudence." *Hankins v. Wheeler*, 109 F.4th 839, 845 (5th Cir. 2024). As shown above, Part II, *supra*, the Appellants are not entitled to immunity even under the Supreme Court's existing precedent. But the Plaintiffs offer the text of Section 1983, which shows that officers shall be liable for constitutional violations notwithstanding common law immunities, in the alternative and to preserve the issue for further review.

## CONCLUSION

For the reasons explained above, Appellants' appeal should be denied.


January 21, 2025                          Respectfully submitted,


Stanley Young                            */s/ David A. Donatti*
Robert Haslam
Miranda Rutherford                       David A. Donatti
Covington & Burling LLP                  Adriana Pinon
3000 El Camino Real                      Ashley Harris
Palo Alto, CA 94306                      ACLU of Texas
(650) 632-4704                           P.O. Box 12905
syoung@cov.com                           Austin, TX 78711-2905
rhaslam@cov.com                          (713) 942-8146
mrutherford@cov.com                      ddonati@aclutx.org
                                         apinon@aclutx.org
Darren Teshima                           aharris@aclutx.org
Jess Gonzalez Valenzuela
Covington & Burling LLP                  *Counsel for Appellees*
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105
(415) 591-6000
dteshima@cov.com
jgonzalezvalenzuela@cov.com

Celin Carlo-Gonzalez
Ainsley McMahon
Covington & Burling LLP
The New York Times Building
600 Eighth Ave.
New York, NY 10018-1405
(212) 841-1088
ccarlogonzalez@cov.com
amcmahon@cov.com

# CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 10,599 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.


*/s/ David A. Donatti*
David A. Donatti

## CERTIFICATE OF SERVICE

I hereby certify that an electronic copy of the above and foregoing has been served on all counsel of record through filing in this Court's CM/ECF electronic filing and notice system on January 21, 2025.

*/s/ David A. Donatti*
David A. Donatti